16742

KIRKPATRICK v. KIRKPATRICK

(75 S. E. (2d) 876)

358

*Messrs. M. D. Douglas,* of Winnsboro, and *Henry C. Jennings,* of Bishopville, *for Appellant,*

*Messrs. T. K. McDonald* and *George F. Coleman,* of Winnsboro, *for Respondent,*

*Messrs. M. D. Douglas,* of Winnsboro, *Henry C. Jennings,* of Bishopville, and *Samuel Want,* of Darlington, *for Appellant, in reply,*

May 11, 1953.

TAYLOR, Justice.

This appeal arises out of an action in equity for the specific performance of an oral contract alleged to have been entered into in November, 1949, between respondent, Joe Gladney Kirkpatrick, and his half great-aunt, Mrs. C. L. Gladney Roberts, who died intestate in Fairfield County. December 29, 1950.

After issue was joined, the Honorable Steve C. Griffith, Presiding Judge of the Sixth Judicial Circuit, appointed the Honorable C. E. Saint-Amand, of Newberry, South Carolina, Special Referee in the matter, who after hearing the testimony reported in a most able, comprehensive and enlightening manner his findings of law and fact in his Report dated February 25, 1952, holding that plaintiff-respondent had proven his case in accordance with the applicable principles of law and recommended that the Court decree specific performance of the oral contract as prayed for in the Complaint. Exceptions were thereafter taken to this Report which were heard by the Honorable Bruce Littlejohn, who in an Order dated May 16, 1952, confirmed the Report of the

Referee in its entirety. Appellant-defendant now comes to this Court upon exceptions which according to his brief pose the following questions:

"1. Is the evidence in the record sufficient to establish the alleged oral contract to make a will under the rules of law and decisions of the Supreme Court of this State applicable to such cases?

"2. Does the testimony in the record establish full performance on the part of the plaintiff to take the case out of the statute of frauds, and is the alleged contract sufficiently definite and certain in its terms and a sufficiently clear, definite and unequivocal agreement as to entitle plaintiff to specific performance if fully performed?"

Keeping in mind the quantum of proof necessary in this type of case, we have examined this record with considerable circumspect and find that the Special Referee in his Report has depicted very clearly the facts as set forth in the evidence and their application to the law.

At the time of the decease of Mrs. Roberts, she left as her sole heir at law and next of kin her seventy-seven year old half sister, Mrs. Frances G. Kirkpatrick, who before the case was heard, died leaving as her sole heir at law her son, D. Aiken Kirkpatrick, and he was substituted as party defendant in this action and now appears as appellant. The controversy therefore is between a half great-nephew of Mrs. Roberts and her half nephew, and involves all personal property of Mrs. Roberts together with several tracts of land in Fairfield County near Salem Crossroads in a sparsely settled community, there being only eight or nine houses situated within a radius of one-half mile of the crossroads. The business district consists of two stores and a small empty building (owned by Mrs. Roberts) **which is referred to as** the filling station.

Mrs. Roberts, who was 67 years of age at the time of her death, had for more than ten years prior thereto been conscious of the infirmities of her age and the unpleasant circumstances of living alone in a large two story frame house

and the evidence shows that she had given considerable thought to having someone, preferably a member of the Kirkpatrick family, live with her in this home. Evidently it was out of this desire that Respondent's cause of action evolved as he contends that in consideration of Mrs. Roberts' promising to will him all property, he, his wife and baby moved from Blacksburg, South Carolina, in July, 1950, and lived with Mrs. Roberts until her death in December, 1950.

Mrs. Roberts' husband died in 1929 while living on the property now in question. Thereafter, Mrs. Roberts taught school until 1937 which required her to be away from home except during the summer months. She was well educated and a person accustomed to making her own decisions. She took an active part in church work and managed her own affairs. When she returned to the old home in 1937, the appellant, her half nephew, was living there with his wife. Later he obtained work and moved to Shivar Springs, South Carolina, and then to his present home at Bishopville, South Carolina. It clearly appears from the testimony that there was ill feeling between Mrs. Roberts and appellant's wife and that his wife never visited in Mrs. Roberts' home from 1937 until her death. The testimony also shows that Mrs. Roberts repeatedly stated that she would rather see her property burned than to have the appellant's wife enjoy any of it. After Mrs. Roberts found herself alone in her home in 1937, she made repeated efforts to persuade some member of the Kirkpatrick family to move into her home and live with her. Respondent's father testified that in 1938 Mrs. Roberts, who was his half aunt, made him the proposition that if he would move from Blacksburg, South Carolina, with his family into her home she would will him all her property, but he declined on the grounds that he had been working with the same company for twenty-four years, earning a good salary, and could not afford to make the change. This offer was repeated again in 1944. He further testified that he did not believe that his family and Mrs. Roberts could live peacefully together as Mrs. Roberts was a very strong-willed person.

In 1949, respondent, his wife and father visited in Bishopville, South Carolina, and in a conversation with appellant, D. Aiken Kirkpatrick, the latter suggested that the respondent and his wife move to Salem Crossroads and live with Mrs. Roberts. Thereafter, in November, 1949, at the home of Mrs. Roberts, in the presence of respondent's wife, father and mother, this was discussed and the oral contract out of which this case arose was alleged to have been entered into between respondent and Mrs. Roberts, wherein Mrs. Roberts told the respondent that if he and his family would move to Salem Crossroads and live with her and help look after her, she would will him all her property.

Respondent testified that he is twenty-seven years of age, and after leaving the Army in 1945, was employed by Duke Power Company for approximately two years; that he ended his employment with the company and attended Gardner-Webb College at Shelby, North Carolina, for two years and while there in 1948, married his present wife; that he left college and resumed his work with Duke Power Company; that at the time he left Blacksburg to move into the home with Mrs. Roberts he was earning $225.00 per month and was living with his parents in Blacksburg; that he had one child six months old; that the nature of his work kept him away from his home approximately five days each week and he did not like to be away so much of the time; that after a conference with Mrs. Roberts he and his family did move to her home in July, 1950, and remained there until her death.

The respondent's wife and father testified that they were present when the agreement was made to the effect that Mrs. Roberts would will respondent "all of my property" if he and his family would move in her home at Salem Crossroads and look after things and care for her. Before doing so, however, it was necessary that certain repairs be made to the Roberts' dwelling, in order to accommodate respondent's family, and to the filling station. A well was dug and arrangements made with a gasoline company to furnish gaso-

line and oil and other work was done before the respondent's family could move to Salem Crossroads. This line of testimony also shows that between November, 1949, and July, 1950, the respondent and his family began moving their furniture by piecemeal to Mrs. Roberts' home, and that during the days he was not at work for Duke Power Company, he and his wife went to Salem Crossroads where respondent did repair work about the premises.

The testimony further shows that the filling station building was originally one room, approximately eight by ten feet, and had been unoccupied for approximately one year immediately prior to respondent's occupancy; that another room was added and approximately $100.00 in grocery stock purchased and the place operated as a store in conjunction with the filling station. There were no wash or grease racks so the business consisted of retailing groceries, gasoline and oil. Later as it appeared there was insufficient business for another store and filling station in Salem Crossroads, this business was abandoned.

There is ample testimony to show that Mrs. Roberts was well pleased with the company and companionship of the respondent and his wife, she having eaten practically every meal with them other than breakfast. Mrs. Kirkpatrick, the respondent's wife, is portrayed as having been a most pleasing and cheerful companion to Mrs. Roberts. Mr. Louis Kay Martin, a man sixty-three years old and a part time minister who had known the deceased practically all her life, living in that vicinity, testified that Mrs. Roberts had told him that she was happy to have the respondent and his family with her and that she felt the Lord had sent them to her to take care of her as long as she lived. Respondent's wife testified that Mrs. Roberts was in a weakened physical state at the time she and her husband moved to her home, having at that time several boils and carbuncles around her ears and head and that she did everything she could for her comfort and welfare and was her constant companion, read to her, went walking with her and did everything she could

to help in and around the house, in the garden and yard and at night spent the evenings with her. They had Church Circles together and were constant pals and friends.

In November, 1950, Mrs. Roberts sustained a fall resulting in a broken hip and she was carried to a hospital in Columbia where she died approximately one month later. Immediately after her death and burial, appellant, D. Aiken Kirkpatrick, and his mother went to Mrs. Roberts' home where a very diligent search was made for the will which respondent expected Mrs. Roberts had left. Although Mrs. Roberts had been in the habit of consulting attorneys in regard to some of her matters, no one in that community had heard anything about a will, no attorney was found who had drawn one and no one found who had witnessed such an instrument.

It appears from the evidence that respondent was at the outset influenced to some extent by appellant who suggested that he enter some such arrangement with Mrs. Roberts, as was actually done, in order that she might have someone to look after her; that he left Blacksburg, South Carolina, where he was living with his father, and his job which paid a salary of $225.00 per month and moved into the home of the deceased at Salem Crossroads where there was no opportunity of obtaining work for a salary and scant opportunity of making a profit out of the operation of the filling station. All of this when considered in conjunction with the other evidence heretofore referred to and the fact that the deceased had repeatedly expressed a desire to make just such an arrangement with some member of the family is sufficient in our opinion to meet the test as set forth in *Young v. Levy,* 206 S. C. 1, 32 S. E. (2d) 889, whether it be considered in the light of the majority or dissenting opinions therein. Elaboration upon which will serve no useful purpose here, however, the following citations of more recent cases on this subject may be of help. *Anderson v. Purvis,* 211 S. C. 255, 44 S. E. (2d) 611; *Lyon v. Bargiol,* 212 S. C. 266, 47 S. E. (2d) 625; *Samuel v. Young,*

214 S. C. 91, 51 S. E. (2d) 367; and *McConnell v. Crocker,* 217 S. C. 334, 60 S. E. (2d) 673.

For the foregoing reasons, we are of the opinion that the evidence is sufficient to establish the oral contract to make a will and that respondent performed that which was required of him sufficiently to take the case out of the statute of frauds; that all exceptions should be dismissed and the judgment appealed from affirmed and it is so ordered.

BAKER, C. J., STUKES and OXNER, JJ., and JAMES B. PRUITT, A. A. J., concur.