## 18082

Levi BROWN and John Brown, Appellants, v. Mattie McCants GRAHAM, Individually and as Executrix of the Last Will and Testament of Queen McCutchen, and as Administratrix, c.t.a., d. b. n. of the Estate of Elliott McCutchen and Annie McGill Fletcher, Respondents.

(131 S. E. (2d) 421)

*M. L. Meadors, Esq.,* of Florence, *for Appellants,*

*Messrs. Yarborough & Nettles* and *C. T. McDonald,* of Florence, *for Respondents.*

June 11, 1963.

Lewis, Justice.

The plaintiffs brought this action to require the specific performance of an alleged oral contract to make a will, which the plaintiffs claim to have entered into with Elliott McCutchen, deceased. Involved is the ownership of a 145 acre tract of farm land in Florence County, South Carolina, owned by Elliott McCutchen at the time of his death in 1952.

The plaintiffs alleged that they were the illegitimate sons of Elliott McCutchen and that, recognizing such fact, Elliott agreed to make a will devising to them his real estate, consisting of the foregoing 145 acre farm, upon the death of his wife Queen McCutchen, "if they would remain with him and operate his farm or assist him if he became ill and help him in the conduct of his business generally." They allege performance of the contract on their part. Elliott McCutchen did not devise the land to the plaintiffs but, instead, left a will in which he devised fee simple title to all of his property to his wife who, at her death in December, 1954, left a will in which she devised a tract of farm land formerly owned by her husband, described as containing 100 acres, more or less, jointly to a sister and sister-in-law, the defendants in this action.

The defendants, in their answers, deny the making of the alleged contract and its performance by the plaintiffs, and plead the statute of frauds, laches, and estoppel as a bar to this action.

The issues were referred to the Master for Florence County under a general order of reference, and he filed a report dated May 1, 1957, sustaining the alleged contract to devise and recommending that specific performance thereof be ordered by the court. Upon exceptions to the report, the circuit court reversed the findings of the Master and denied specific performance upon the ground that the plaintiffs had failed to establish the contract relied upon by the requisite degree of proof. The plaintiffs have appealed from such adverse judgment. Also involved is an appeal by the defendants from an order of the lower court settling the case for appeal to this Court.

The sole question presented by the appeal of the plaintiffs is: Did the lower court err in holding that they had failed to establish the alleged contract between them and the deceased, Elliott McCutchen, by the degree of proof required under the law?

The issues are primarily factual and concern the establishment of an alleged oral contract to devise.

It is well settled that such agreements must possess all of the essential elements of a legal contract. *Baylor et al. v. Bath et al.,* 189 S. C. 269, 1 S. E. (2d) 139.

The burden of establishing the existence of the alleged contract and its terms rested upon the plaintiffs. However, the usual rule of preponderance or greater weight of the evidence, applicable to civil actions generally, does not apply in actions to establish a parol contract to devise. It is not enough that such an agreement be proven by a mere preponderance of the evidence. Such contracts are regarded with suspicion and will not be sustained unless established by definite, clear, cogent and convincing evidence, a higher degree of proof than is necessary in the usual civil case. *Young v. Levy,* 206 S. C. 1, 32 S. E. (2d) 889; *Samuel v. Young,* 214 S. C. 91, 51 S. E. (2d) 367.

Our inquiry then is: Have the plaintiffs established the existence of the contract as alleged by definite, clear and convincing evidence?

Elliott McCutchen owned a tract of farm land, consisting of 145 acres, more or less, located in Florence County, South Carolina upon which he and his wife, Queen McCutchen, resided for a number of years prior to their death. They had two children who died in their infancy. They resided upon the farm alone and during the last few years of their life were in declining health. Experiencing difficulty in operating it because of their health, the farm was rented to one Baxley for the years 1949 and 1950 but, beginning with the year 1951 and until the death of Elliott and his wife, it was farmed by the plaintiffs, John and Levi Brown, who resided on lands nearby.

The plaintiffs contend that about 1950 Elliott McCutchen entered into the alleged agreement to devise his real estate to them, and that pursuant thereto they began operating the farm in 1951 and looking after Elliott, his wife, and their business affairs.

Elliott died in 1952 leaving a will dated April 6, 1943 in which he devised all of his property, including the foregoing land, to his wife. He left no other will. His wife died in 1954 leaving a will dated January 22, 1953 in which she devised the land jointly to the defendants in this action.

The plaintiffs rely upon the testimony of three witnesses to establish the alleged contract.

P. D. Poston, who was a merchant in the Town of Johnsonville and also made farm loans for concerns represented by him, testified that in the Fall of 1951 the plaintiffs, John and Levi Brown, applied to him for a loan to finance their farming operations. John Brown owed to the witness a past due account, and he refused to make the loan unless Elliott McCutchen and his wife would sign a real estate mortgage over their land as security, not only for the loan applied for but also the past due indebtedness of John. Later, the plain-

tiffs brought Elliott and his wife to the store of Mr. Poston where they executed the requested mortgage and, in the course of this transaction, the witness testified that Elliott told him that he was going to give the property to the plaintiffs. The pertinent testimony of the witness was as follows: "Well, Elliott told me, says, 'These are my boys.' I had knew John and Levi Brown as John and Levi Brown for years, but I had no idea that they were the sons of Elliott McCutchen. So he says, 'These are my boys,' he says, 'They are my boys by Queen's sister,' in the presence of Queen; and he says. 'I am leaving my place to these boys', and says, 'I want them to keep plenty of wood for me and Queen to keep warm with; and when I die, I want them to keep plenty of wood for Queen as long as she lives and the place will be theirs.' He says, 'I am giving it to my boys.'"

The other two witnesses were employees of P. D. Poston and testified that they were present and heard the statements made by Elliott McCutchen at the time of the signing of the above mentioned mortgage. One of the witnesses testified that he heard Elliott say, with reference to leaving his property to the plaintiffs: "I am going to leave them what I got—I want them to take care of Queen and me as long as I live—I am going to leave them the property." The other witness said that she heard Elliott say: "These are my boys and I am going to leave the place to them if they stay and work the farm and look after me, and then take care of Queen as long as she lives."

The foregoing was the only admissible evidence upon which the existence of the alleged contract could be based.

It is unnecessary for us to determine whether the foregoing testimony, if true, established the essential elements of a contract, for the record contains substantial testimony which casts strong doubts upon the existence of any contract of the nature alleged. The testimony as to the actions of the plaintiffs rather indicated that they did not contend that they had any contractual rights with respect to the property of Elliott McCutchen prior to the bringing of this action.

The plaintiffs' case is based upon the contention that they became the owners of the property of Elliott McCutchen by virtue of the alleged contract to devise. Elliott died on May 19, 1952. His will was admitted to probate on June 5, 1952, of which the plaintiffs had knowledge. Yet, on June 4, 1953, the plaintiff Levi Brown, purchased from Queen McCutchen 15 acres of the same land which he now claims he owned by virtue of a prior binding contract with Elliott McCutchen. He paid $800.00 for this tract of land, which he testified was a full and fair price therefor. There is no explanation of why he would purchase, at a full price, land which he later claimed that he owned under the alleged contract.

Additionally, after Queen McCutchen died, the plaintiffs went to Georgia, where the defendant Annie McGill Fletcher lived, for the purpose of attempting to buy the portion of the lands devised to her under the will of Queen McCutchen. Also, as late as November, 1955, counsel for the plaintiffs wrote a letter in their behalf attempting to lease the defendant Fletcher's share of the land. During all of this time, no claim or mention was made as to the contract which plaintiffs now attempt to assert.

Also, the proof offered by the plaintiffs with respect to performance by them of the obligations allegedly assumed to take care of Elliott and his wife casts serious doubt upon the existence of the alleged contract. The plaintiffs farmed the lands from 1951 until after the death of Elliott's wife in 1954. The inference is fairly deducible from the record that Elliott and his wife received very little of the income from these farming operations. The record does clearly show that in 1951, after the plaintiffs allegedly began looking after the affairs of Elliott, a mortgage was placed upon the real estate in question, at the request of the plaintiffs, as security for a prior indebtedness of the plaintiff John Brown and to secure additional funds which were turned over to the plaintiffs. The amount of this mortgage indebtedness increased during the period. This testimony strongly indicates that the plaintiffs were not acting pursuant to a contract with Elliott to devise the lands to them.

Further review of the testimony is unnecessary. After a careful consideration of the record, we are convinced that the lower court properly concluded that the plaintiffs failed to establish the alleged contract to devise by the high standard of proof required in cases of this kind.

The remaining question for determination arises under the exceptions of the defendants to the order of the lower court settling the case on appeal. It appears that the Master, to whom the cause was referred, issued two reports, one under date of March 19, 1957, and the other on May 1, 1957, the first recommending that the complaint be dismissed and the latter that specific performance be ordered. The lower court in settling the case ordered the printing of the report of May 1, 1957 as a part of the record, but refused to require the printing of the first report dated March 19, 1957. This was proper. The issues were brought before the lower court upon exceptions only to the report of May 1st. Nowhere in those exceptions is the prior report of March 19th mentioned. It does not appear that the first report was made a part of the record before the lower court and was properly excluded from the record on appeal.

Affirmed.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, JJ., concur.