## 18810

Raymond W. CAULDER, Administrator of the Estate of Anna Boyd W. Caulder, Respondent, v. Edna M. KNOX, Individually and as Administratrix of the Estate of L. L. Knox, Novelena K. Driggers and Margie K. Marsh, a Minor over the age of fourteen (14) years, Appellants.

(162 S. E. (2d) 262)

*Messrs. C. K. Truluck,* of Olanta, and *James E. O'Shields,* of Hemingway, *McEachin & McEachin,* of Florence, *LaNue Floyd,* of Kingstree, *for Appellants,*

*Messrs. Nettles, Thomy & Floyd,* of Lake City, *for Respondent,*

July 10, 1968.

LITTLEJOHN, Justice.

This action in equity was brought by Mrs. Anna Boyd W. Caulder for specific performance of an alleged oral con-

tract to make a will devising to her 28 acres of land located in Florence County.

After the trial of the case Mrs. Caulder died and her husband Raymond W. Caulder, as administrator, was substituted as party plaintiff. The defendants are the widow and two nieces of L. L. Knox, who died intestate leaving these three as his heirs.

The circuit judge, confirming the report of the master in equity, held that the contract had been established and ordered the heirs of L. L. Knox to convey the property to the heirs at law of Mrs. Anna Boyd W. Caulder.

The order of the lower court is before us on fifteen exceptions, raising, however, only three basic questions taken from appellants' brief as follows:

1. Did the evidence of the existence of a contract to make a will meet the necessary degree of proof required to establish such a contract?

2. If the alleged contract existed, is respondent entitled to specific performance thereof?

3. Was there error in giving weight to testimony of respondent [Mrs. Caulder] that she was never paid for any of her services to the intestate [L. L. Knox] or his mother?

The first question which this court must determine is: did L. L. Knox in 1947 enter into a binding agreement to convey by will the 28 acre tract of land involved to his foster sister, Mrs. Anna Boyd W. Caulder?

We review the evidence in the light of the rule of this court that: "The ordinary rule of preponderance or greater weight of the evidence, applicable to civil actions generally is insufficient in this class of cases; some Courts require proof beyond a reasonable doubt, as on the criminal side; universally a higher degree of conviction of truth is necessary than in the usual civil case." *Young v. Levy,* 206 S. C. 1, 32 S. E. (2d) 889.

Mrs. Anna Boyd W. Caulder was reared from infancy by her mother's brother, Walter Welsh and his wife Anna

Welsh. Anna Welsh had two sons, Otis Knox and L. L. Knox, by a previous marriage. The two Knox boys and Mrs. Caulder lived in the Welsh home as brothers and sister until she was married at the age of twenty in 1930. Mrs. Caulder said that she was grown before she learned that the Welshs were not her own parents.

By 1947 Walter Welsh had died and his widow, Anna Welsh, was the sole owner of the 28 acre tract of land involved. She and her son, L. L. Knox, were living together in a house on the same tract. Mrs. Anna Welsh was suffering from arthritis and was in poor health. L. L. Knox was working in Florence at the air base and was away during the day. The land was being sharecropped by a tenant.

At that time Mrs. Anna Boyd W. Caulder, her husband, and children were sharecropping a farm on the Ben Truluck place located about two miles away. Mrs. Welsh's other son, Otis Knox, was living in Georgetown.

The trial court ruled out the testimony of Mrs. Caulder under the dead man statute. We proceed to consider the other evidence, applying the rule stated above.

The testimony of Raymond Caulder, is that during the year 1947, while he and his wife were at the Welsh home, a conversation took place between L. L. Knox and Mrs. Caulder. His testimony is susceptible of both the inference that they (the Caulders) had already moved into the home of Mrs. Welsh, and susceptible of the inference that they still lived on the Truluck farm. From the whole of the showing, however, we conclude that they were already residing at the Welsh house.

The following is taken from the record and indicates the conversation upon which plaintiff relies to establish the contract: (Raymond Caulder is testifying)

"Q. Sometime about two years before her death, did you have occasion to be present in the dining room of the home in which Mr. Leon and Mrs. Anna were living, on Sunday, at which a conversation took place between your wife, Mrs. Anna Boyd W. Caulder, and Mr. L. L. Knox?

"A. I was.

"Q. Will you tell us what, if anything, took place in that conversation?

"A. He started talking about his mother being so sick.

"Q. Who was he talking to?

"A. Boyd, my wife.

"Q. All right, go on.

"A. He said, 'We see that Mama can't live too much longer. I know I will have to pay Otis off when she dies, and if you will come and look after Mama while I am away in the daytime at work, when I am through with the place, I will have it fixed where you will reap the benefit of it, and if you are not living then, I will have it fixed where your children will reap the benefit.' And he said, 'I might need your help myself.'

"Q. As a result of that statement having been made to her, what, if anything, did Mrs. Anna Boyd say?

"A. She told him she would come when he wanted her." He further testified that he and Mrs. Caulder, along with four of their children, remained in the home and cared for Mrs. Welsh until her death on March 15, 1949. A portion of their household furnishings were moved to the Welsh house, but their home was not closed, and he continued to work the Truluck farm.

It is his testimony that during this period of some two years L. L. Knox worked in Florence at the air base, but continued to maintain his same home, commuting to work daily. Knox paid for medical bills, but he (Caulder) paid for the groceries. Mrs. Caulder did all of the housework and cared for Mrs. Welsh, who was bedridden. The Caulders received no pay for their assistance.

About three weeks after the death of Mrs. Welsh they moved back to the Truluck farm. L. L. Knox and Otis Knox inherited the land here involved and eight months later L. L. procured by deed the interest of Otis such that he became the sole owner on October 7, 1949.

Apparently after his mother's death Mr. Knox lived by himself for several years. About 1955 he was assaulted and seriously injured, being paralyzed from the waist down for some time. The Caulders moved back to his home again and stayed about nine months to help him.

In February 1957 L. L. Knox married Edna M. Knox. He died in 1963 without having made a will, and leaving as his heirs at law his widow and two nieces, all of whom are defendants in this case.

The plaintiff relies on the conversation cited above, together with all of the surrounding circumstances to establish the contract to devise.

In addition, plaintiff would for corroboration rely on the testimony of witness Dallas L. Pigate, who operated the store at which the Caulders traded. Pigate said that he saw Mr. Knox almost daily, and testified as follows relative to a conversation he had with Mr. Knox: "The question came up one night (concerning disposition of his property) and we talked about it, and he said that Boyd had been good to him and to his mother and that his plans were that he was going to give her the place."

Mrs. Cecile Lee, a witness for the plaintiff testified that she had a conversation with Mr. Knox in the presence of her husband at a time she believed to be after the death of Mrs. Welsh, and quotes him as saying, in answer to a question as to why he didn't sell the property, "I don't have much and Boyd and her children need it."

Her husband, Kelly Lee, confirmed the conversation and testified that Knox said he thought Boyd was entitled to the property. He testified that on a later occasion Knox said he was remodeling the house and that "Boyd and her children is going to get the farm." This latter conversation took place after the death of Mrs. Welsh.

The defendants' evidence consisted solely of Mrs. Edna Knox's testimony and the introduction of her marriage

certificate and the deed from Otis Knox to L. L. Knox dated October 7, 1949. It would appear that the two nieces were extremely young, if born at all, at the time of the alleged contract in 1947. Their age is not in the record but one appears by a guardian *ad litem*. They obviously would know nothing of what took place at the Welsh house.

Mrs. Knox testified that after marrying L. L. Knox in 1957 she lived with him on the premises as man and wife and cared for him and nursed him when he got sick and until his death on June 1, 1963. Apparently it was a year or two after their marriage before the Caulders visited with them. Thereafter they would visit from time to time and the Knox's would give them farm products.

Mrs. Knox testified that she was aware of the fact that the Caulders had lived with Mrs. Welsh and Mr. Knox but did not know just what services they had rendered. The Caulders visited with Mr. Knox regularly while he was in the hospital during his last six days of illness.

Mrs. Knox denied certain statements made by Mrs. Caulder relative to a conversation with Mr. Knox in her presence, but inasmuch as such testimony of Mrs. Caulder was excluded, the denial is likewise excluded and of no probative value.

Under our cases it is well settled that one can make an enforceable contract to dispose of property by will. *Kirkpatrick v. Kirkpatrick,* 223 S. C. 357, 75 S. E. (2d) 876. In such case equity requires that the contract possess all of the essential elements of a legal contract. *Brown v. Graham,* 242 S. C. 491, 131 S. E. (2d) 421, and *Baylor, et al. v. Bath, et al.,* 189 S. C. 269, 1 S. E. (2d) 139. The contract may be either oral or written.

A contract to make a will must have the essential elements of any contract, which are, a contractual intent, followed by an actual meeting of the minds of the parties and accompanied by a valid consideration. *Baylor v. Bath, supra.* The terms of the contract must be definite and certain. *Dicks v. Cassels,* 100 S. C. 341, 84 S. E. 878.

The intention of the parties should be determined from the surrounding circumstances, as well as from the testimony of all witnesses; and subsequent acts are relevant to show whether a contract was intended. *Kerr v. Kennedy,* 105 S. C. 496, 90 S. E. 177. A mere declaration or intent will not give rise to a contract.

Under Article V, Section 4 of the constitution of this State this court has the authority and corresponding duty to review the findings of fact of the lower court. See *Young v. Levy, supra.*

So far as the record shows, there was no conversation between Mr. Knox and the Caulders relative to his making a will in her favor between 1947 and 1963. There is no writing or other evidence to support the alleged contract other than the oral testimony summarized above and the surrounding circumstances which were developed at the trial.

At the time of the conversation in the dining room in 1947 referred to above, it must be kept in mind that there is no contention that Mrs. Welsh was a party to the alleged contract. She owned the land solely. L. L. Knox owned no interest in the property and could only deal with it on the assumption that he would inherit a one-half interest and on the further assumption that he could and would buy the interest of his brother Otis. A study of Knox's alleged statement relied upon by Raymond Caulder to establish the contract is short of the requirement that an oral contract to make a will must be definite and certain and unambiguous.

The fact that Mrs. Caulder without dispute did come to the home of Mrs. Welsh and render aid is entitled to considerable weight as obviously concluded by the lower court. Such action, however, must be evaluated in the light of the fact that she bore, in effect, the relationship of a daughter to the sick person. In actuality, she had more obligation to Mrs. Welsh than a daughter because Mrs. Welsh had given her a home for twenty years and treated her the same as a

child. This set of facts makes it plausible that she came and helped without the necessity of a contract.

Evidence by both the plaintiff and the defendants is understandably scant. Anna Welsh and L. L. Knox are dead. Mrs. Caulder was disqualified to testify as to any transaction or communication between her and L. L. Knox. Edna Knox, the widow, did not come into the family until ten years after the alleged contract. The two nieces must have been born along about the time of the alleged contract. The corroborating testimony of witnesses Pigate and Mr. and Mrs. Lee have little persuasion. At most, their testimony served the purpose of tending to. prove that L. L. Knox intended to will the property to Mrs. Caulder. Such testimony does not tend to prove that Knox had entered into a binding contract to devise the land to her. A study of the entire testimony of these three corroborating witnesses fails to disclose any statement on behalf of the deceased Knox which could be construed to indicate that Knox had made an obligation to make a will in favor of Mrs. Caulder.

One who contracts to will property in effect parts with his right to act inconsistent therewith and in effect reserves to himself a life interest only. When one attempts to establish a contract to make a will by parol evidence alone, it is regarded with suspicion and not sustained except upon the strongest evidence that it was founded upon a valuable consideration and deliberately entered into by the decedent. The evidence to sustain it should be received and scrutinized with the greatest of care. The terms of such an agreement should be definite and certain and established by evidence clear and convincing.

Much of the reasoning of the late Chief Justice Stukes, set forth in his able opinion in the case of *Young v. Levy, supra,* is applicable to this case. In that case this court said:

"The stringent rule of the quantum of proof required results (when the alleged contract rests in parol) from the fact that such a contract is in the teeth of the Statute of

Frauds and specific performance (or its equivalent) is properly allowable only when enforcement of that statute would result in a fraud upon the promisee. Only in prevention of fraud do Courts allow a violation of the statute."

> We conclude that the proof in this case is not clear, cogent and convincing, nor does it compel conviction that the contract was actually made.

Since we hold that the contract has not been established by the required degree of proof it is not necessary to rule on the other questions raised by the exceptions.

The order of the lower court is Reversed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.