**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Terrence "Terry" Carroll, Appellant,

v.

Debra Mowery, TD Realty, Upstate RE Group, Hawk Shadow Business Services, LLC, and Debra Mower Realtor, Respondents.

Appellate Case No. 2020-000396

Appeal From Pickens County
Charles B. Simmons, Jr., Special Referee

Unpublished Opinion No. 2023-UP-274
Submitted June 1, 2023 – Filed July 26, 2023

**AFFIRMED**

J. Falkner Wilkes, of Oakland, Mississippi, for Appellant.

Bruce Wyche Bannister, Luke Anthony Burke, and Marcelo Torricos, III, all of Bannister, Wyatt & Stalvey, LLC, of Greenville, for Respondents.

**PER CURIAM:** Terrence "Terry" Carroll appeals the special referee's order denying him relief and dismissing his causes of action for constructive fraud,

breach of trust, breach of contract, interest in and for real estate, quantum meruit, unjust enrichment, and restitution against Debra Mowery; TD Realty; Upstate RE Group; Hawk Shadow Business Services, LLC (Hawk Shadow); and Debra Mowery in her professional capacity as a realtor (collectively, Respondents). On appeal, Carroll argues the special referee erred in dismissing his causes of action against Respondents under Rule 41(b) of the South Carolina Rules of Civil Procedure. We affirm.

**FACTS AND PROCEDURAL HISTORY**

In 2018, Carroll filed a complaint against Mowery alleging causes of action for unjust enrichment, interest in and for real estate, intentional infliction of emotional distress, specific performance of contract, breach of contract, temporary injunction, restitution, constructive fraud, breach of trust, and quantum meruit. Carroll alleged he and Mowery entered into a series of contracts to renovate and rent properties in Maryland and South Carolina, which they purchased using joint funds while in a romantic relationship. Carroll requested an equal division of all real estate and funds acquired during their relationship, as well as $100,000 in damages.

On December 17, 2019, the special referee held a trial on the merits. Carroll testified Mowery purchased a house for them in Maryland (the Maryland property) that he renovated extensively. Carroll recalled that in 2010 he received a $117,000 settlement for injuries he suffered in a car accident. He indicated he used the settlement proceeds to pay off the mortgage on the Maryland property and also gave money to Mowery's tax preparation and accounting business, Hawk Shadow.

Carroll stated he and Mowery decided to buy a house in Easley, South Carolina—the Linda Lane property—which Mowery paid for by taking out a second mortgage on the Maryland property and with a loan she deposited into their joint checking account. Carroll maintained he was not involved in the financial aspects of buying the property. Carroll explained Mowery continued to live in Maryland while he moved to Easley to renovate the Linda Lane property. He testified he and Mowery decided to move to the Linda Lane property in 2015, and they lived there until the end of their relationship in 2018.

Carroll recalled he and Mowery made a $71,000 profit from the sale of the Maryland property after paying off the second mortgage, which they deposited into their joint account. Carroll testified he and Mowery decided to use these proceeds to purchase a second house in Easley, the South 9th Street property, for rental purposes. He recalled Mowery purchased the South 9th Street property before she

became a licensed realtor. Carroll stated he and several family members renovated the property with money from his and Mowery's joint account.

Carroll testified that shortly after buying the South 9th Street property, Mowery bought a third home in Easley, the Pope Field Road property, for $42,000 with money from their joint account. He explained they decided to put the three properties located in Easley and the Maryland property (collectively, the properties) in Mowery's name to ensure she would not require his signature on any paperwork related to the properties.

Carroll stated that when they decided to end their relationship in 2018, Mowery agreed to split their assets equally. Carroll testified he discovered that Mowery cancelled his credit cards and took his name off their joint bank account the day after they decided to end their relationship. He stated Mowery also continued to drive a Jaguar convertible he bought at auction. Carroll indicated he wanted the properties to be equally divided as he and Mowery originally discussed. He stated he put his own money into the renovation of the properties, including $2,500 from the sale of his boat, which they used to buy windows for the Linda Lane property.

On cross-examination, Carroll acknowledged he and Mowery never married but he stated they acted like a married couple. He confirmed that the properties and the convertible were all titled in Mowery's name. He testified he did not have any written agreement or contract with Mowery regarding how they planned to manage the properties because their agreement changed day to day. Carroll stated he believed he held the title of vice president of Upstate RE Group, Mowery's real estate business, and was vice president and part owner of TD Realty until he received discovery for this case. He explained that the "TD" in the name TD Realty stood for Terry and Debra. Carroll stated he contributed the $42,000 he made from the sale of his boat to the joint account they used to buy the properties and pay their living expenses. Carroll acknowledged he filed a mechanic's lien on the Pope Field Road property to prevent Mowery from selling it without paying him for his renovation work.

John Noel Quinn, Carroll's brother-in-law, testified Carroll renovated the Easley properties, as well as the Maryland property. He stated Carroll and Mowery acted as a couple and as partners in a business until their relationship ended. Constance Fern Quinn, Carroll's sister, also testified Carroll and Mowery were a couple and stated they discussed their plan to run a rental business together to fund their retirement with her and John.

At the close of Carroll's case, Mowery renewed her motion for partial summary judgment as a motion for a directed verdict, which the special referee treated as a motion for involuntary nonsuit. The special referee granted Mowery's motion for involuntary nonsuit as to Carrol's claims for intentional infliction of emotional distress, specific performance of a contract, constructive fraud, and breach of trust and denied the motion as to Carroll's claims for constructive trust and breach of contract.

Mowery testified Carroll did not have a full-time job when they met. She stated she supported them with the money she made from Hawk Shadow. Mowery indicated she took a mortgage out on the Maryland property to pay for the Linda Lane property and stated Carroll had no responsibility for the mortgage payments. Mowery acknowledged she gave Carroll access to her credit cards, which he used to pay for living expenses and supplies while making repairs to the Linda Lane property. Mowery testified she and Carroll never opened a joint bank account, but she indicated she gave him signatory authority on her accounts. According to Mowery, she spent $201,000 supporting Carroll between 2006 and 2018.

Mowery stated only her name appeared on the titles to the properties. Mowery testified she never received an invoice from Carroll indicating he expected payment for his work prior to him filing a mechanic's lien on the Pope Field Road property. She testified that the articles of organization for TD Realty listed her as the organizer of the company, and she denied ever discussing making Carroll an officer of the company. Mowery stated Carroll was not involved in the operation of Upstate RE Group. She testified she paid the taxes on the earnings from TD Realty and Upstate RE Group. Mowery also confirmed only her name appeared on the title for the Jaguar convertible and she paid the insurance for the vehicle.

Mowery stated she decided to end her relationship with Carroll in 2018 because she had no more work available for him and she could not afford to continue paying his expenses. She denied having any ongoing business agreement with Carroll in which he renovated houses in exchange for compensation. Mowery testified she believed paying his living expenses was fair compensation for Carroll's work. She indicated she did not deceive Carroll about the fact that the properties were in her name.

On cross-examination, Mowery stated she was not aware of what Carroll did with the money he received from his car accident settlement. Although Mowery acknowledged Carroll wrote a check for $30,752 after the settlement, she stated she did not know the purpose of the check and denied it was written to pay the first

mortgage on the Maryland property. She testified Carroll worked on the properties during their relationship but he did not pay for the properties or the materials required for the renovations. She stated she purchased the Linda Lane property for $61,000 and believed it was now worth approximately $169,000 but she did not know what the proceeds of the sale of the house would be considering the money she put into the renovations.

In rebuttal, Carroll testified he wrote Mowery a check for $30,712.45 to pay the first mortgage on the Maryland property after Mowery told him she could not afford to pay it. He indicated he also wrote her a check for $5,000 to put into Hawk Shadow. Carroll stated he did not file taxes in his name between 2006 and 2018 because the only income he had to report was "the few jobs that [he] did between friends." He stated Mowery claimed him as a dependent during several years of their relationship to maximize her tax returns. Carroll testified their living expenses were paid out of their joint bank account, which he contributed to, and therefore Mowery did not completely support him financially during their relationship.

In the order denying relief to Mowery and Carroll, the special referee dismissed Carroll's action for constructive fraud, finding Carroll failed to present evidence of falsity on Mowery's part or that he reasonably relied on such a falsity. The special referee dismissed Carroll's breach of trust action, finding Carroll failed to present any evidence of a fiduciary relationship between him and Mowery. The special referee also denied Carroll relief based on his causes of action for interest in and for real estate, which the special referee considered as a constructive trust claim, and breach of contract. Additionally, the special referee denied Carroll relief based on unjust enrichment, quantum meruit, and restitution because he found there was insufficient evidence to determine what financial contributions each party made to the relationship or to the expenses related to the real estate transactions that occurred during their relationship. The special referee stated that likely neither party contributed significantly more or less money and time to the relationship but if one party did contribute more than the other, any such contribution should be considered a gift to the other party.[1] Carroll filed a motion for reconsideration, arguing unjust enrichment occurred because Mowery profited from his financial

---

[1] The order stated Carroll argued the special referee "should enforce a marriage-like contract between the parties even though no marriage existed." This reflected the special referee's belief that Carroll sought equitable distribution, which was not available to him.

contributions and labor during their relationship.[2]  The special referee denied the motion, finding the arguments raised in the motion had been considered during the trial.  This appeal followed.

## ISSUES ON APPEAL

1.  Did the special referee err in dismissing Carroll's cause of action for constructive fraud?

2.  Did the special referee err in dismissing Carroll's cause of action for breach of trust based on a finding that no evidence was offered to prove a fiduciary relationship existed between the parties?

3.  Did the special referee err in denying Carroll's causes of action for unjust enrichment, interest in and for real estate, breach of contract, restitution, and quantum meruit?

## STANDARD OF REVIEW

"After the plaintiff in an action tried by the court without a jury has completed the presentation of his evidence, the defendant, . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." Rule 41(b), SCRCP.  "Rule 41(b) allows the judge as the trier of facts to weigh the evidence, determine the facts and render a judgment against the plaintiff at the close of his case if justified." *Johnson v. J.P. Stevens & Co.*, 308 S.C. 116, 118, 417 S.E.2d 527, 529 (1992).

"When legal and equitable actions are maintained in one suit, the court is presented with a divided scope of review, and each action retains its own identity as legal or equitable for purposes of review on appeal." *Wright v. Craft*, 372 S.C. 1, 17, 640 S.E.2d 486, 495 (Ct. App. 2006).  "In an action at law tried without a jury, an appellate court's scope of review extends merely to the correction of errors of law." *Temple v. Tec-Fab, Inc.*, 381 S.C. 597, 599-600, 675 S.E.2d 414, 415 (2009).  "[An appellate court] will not disturb the trial court's findings unless they are found to be without evidence that reasonably supports those findings." *Id.*  "In an action at equity, a reviewing court can find facts in accordance with its own view of the preponderance of the evidence." *Wright*, 372 S.C. at 19, 640 S.E.2d at 496. "However, this broad scope of review does not require the appellate court to

---

[2] Carroll's reconsideration motion was not included in the record on appeal.

disregard the findings made [by the special referee]." *Goldman v. RBC, Inc.*, 369 S.C. 462, 465, 632 S.E.2d 850, 851 (2006).

## LAW AND ANALYSIS

### I.        Constructive Fraud

Carroll argues the special referee erred in dismissing his claim for constructive fraud based on the finding that he knew Mowery titled the properties in her name. He contends Mowery used her extensive business knowledge and position as a realtor to mislead him in regard to the ownership of the properties and TD Realty. We disagree.

"To establish constructive fraud, all elements of actual fraud except the element of intent must be established." *Ardis v. Cox*, 314 S.C. 512, 516, 431 S.E.2d 267, 269 (Ct. App. 1993).

> In order to prove [actual] fraud, the following elements must be shown: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*Id.* at 515, 431 S.E.2d at 269.  "Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud while intent to deceive is an essential element of actual fraud." *Id.* at 516, 431 S.E.2d at 269-70.  "[I]n a constructive fraud case, where there is no confidential or fiduciary relationship, and an arm's length transaction between mature, educated people is involved, there is no right to rely." *Id.* at 516, 431 S.E.2d at 270.  "This is especially true in circumstances where one should have utilized precaution and protection to safeguard his interests." *Id.* at 516-17, 431 S.E.2d at 270.

"A confidential or fiduciary relationship exists when one imposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." *SSI Med. Servs., Inc. v. Cox*, 301 S.C. 493, 500, 392 S.E.2d 789, 794

(1990). "To establish the existence of a fiduciary relationship, the facts and circumstances must indicate the party reposing trust in another has some foundation for believing the one so entrusted will act not in his own behalf but in the interest of the party so reposing." *Moore v. Moore*, 360 S.C. 241, 251, 599 S.E.2d 467, 472 (Ct. App. 2004).

We hold the special referee properly dismissed Carroll's cause of action for constructive fraud. *See Ardis*, 314 S.C. at 516, 431 S.E.2d at 269 ("To establish constructive fraud, all elements of actual fraud except the element of intent must be established."). We find Carroll failed to establish his right to rely on Mowery's alleged representations because he did not present evidence showing a confidential or fiduciary relationship existed between him and Mowery. *See SSI Med. Servs., Inc.*, 301 S.C. at 500, 392 S.E.2d at 794 ("A confidential or fiduciary relationship exists when one imposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence."); *Ardis*, 314 S.C. at 516, 431 S.E.2d at 270 ("[I]n a constructive fraud case, where there is no confidential or fiduciary relationship, and an arm's length transaction between mature, educated people is involved, there is no right to rely."). Carroll did not present evidence a business transaction took place between him and Mowery. Although Mowery owned a real estate business and an accounting and tax preparation business, Mowery did not act as a realtor or accountant for Carroll during their relationship. Carroll testified he did not file taxes during their relationship and the properties purchased during their relationship were titled in Mowery's name. *See Hendricks v. Clemson Univ.*, 353 S.C. 449, 459, 578 S.E.2d 711, 716 (2003) ("Historically, [our supreme c]ourt has reserved imposition of fiduciary duties to legal or business settings, often in which one person entrusts money to another, such as with lawyers, brokers, corporate directors, and corporate promoters."). Accordingly, we find Carroll failed to show he had a right to rely on Mowery's alleged representations because he did not present evidence showing he and Mowery had a confidential or fiduciary relationship or that a business transaction took place between them.

In addition, Carroll did not present sufficient evidence showing Mowery made false representations about the ownership of the properties and TD Realty. *See Ardis*, 314 S.C. at 515, 431 S.E.2d at 269 (listing the elements of actual fraud, including that the plaintiff must establish the defendant made a false representation). Although Carroll believed Mowery planned to transfer ownership of the properties to TD Realty, he testified he knew Mowery titled the properties solely in her name. Mowery testified she did not deceive Carroll about the fact that she titled the properties in her name and she denied ever discussing making

Carroll an officer of TD Realty.  The deeds to the properties listed her as the sole owner of the properties.  The articles of organization for TD Realty, the company Carroll believed he and Mowery owned together, listed only Mowery as the organizer of the business.  Based on the foregoing, we find Carroll failed to show Mowery made affirmative representations to him regarding the ownership of the properties and TD Realty.  Accordingly, we hold the special referee did not err in dismissing Carrol's constructive fraud claim.

## II.  Breach of Trust

Carroll argues the special referee erred in dismissing his claim for breach of trust because evidence supported a finding that he and Mowery had a fiduciary relationship.  He asserts Mowery owed him a duty of disclosure and honesty regarding the properties she bought and he renovated based on her position as a realtor and broker.  We disagree.

We hold the special referee did not err in dismissing Carroll's cause of action for breach of trust because, as discussed above, he failed to present evidence showing he and Mowery had a fiduciary relationship.  *See SSI Med. Servs., Inc.*, 301 S.C. at 500, 392 S.E.2d at 794 ("A confidential or fiduciary relationship exists when one imposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence."); *Moore*, 360 S.C. at 251, 599 S.E.2d at 472 ("To establish the existence of a fiduciary relationship, the facts and circumstances must indicate the party reposing trust in another has some foundation for believing the one so entrusted will act not in his own behalf but in the interest of the party so reposing."); *Hendricks*, 353 S.C. at 459, 578 S.E.2d at 716 ("Historically, [our supreme court] has reserved imposition of fiduciary duties to legal or business settings, often in which one person entrusts money to another, such as with lawyers, brokers, corporate directors, and corporate promoters.").  Carroll had no fiduciary relationship with Mowery related to her work as a real estate agent or accountant.  Mowery did not perform any tax preparation or accounting work for Carroll because he did not file taxes during their relationship.  Mowery also did not act as Carroll's realtor because the properties purchased during their relationship were titled in her name and she was not a licensed realtor at the time the properties were purchased.  Therefore, we hold the special referee did not err in dismissing Carroll's claim for breach of trust.

## III.  Breach of Contract and Interest in and for Real Estate

Carroll argues the special referee erred in dismissing his claims for breach of contract and interest in and for real estate because he provided sufficient evidence an agreement existed between the parties. He contends the record shows he and Mowery had an agreement in which she arranged the purchase of the properties and handled the paperwork associated with the purchases while he renovated the properties. We disagree.

"The elements for a breach of contract are the existence of a contract, its breach, and damages caused by such breach." *S. Glass & Plastics Co. v. Kemper*, 399 S.C. 483, 491-92, 732 S.E.2d 205, 209 (Ct. App. 2012). "The necessary elements of a contract are an offer, acceptance, and valuable consideration." *Roberts v. Gaskins*, 327 S.C. 478, 483, 486 S.E.2d 771, 773 (Ct. App. 1997). "[I]n order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to all essential and material terms of the agreement." *Player v. Chandler*, 299 S.C. 101, 105, 382 S.E.2d 891, 893 (1989). "The intention of the parties should be determined from the surrounding circumstances, as well as from the testimony of all the witnesses; and subsequent acts are relevant to show whether a contract was intended." *Wright v. Trask*, 329 S.C. 170, 178, 495 S.E.2d 222, 226 (Ct. App. 1997) (quoting *Caulder v. Knox*, 251 S.C. 337, 345, 162 S.E.2d 262, 266 (1968)).

Under the Statute of Frauds, contracts for the sale of real property must be reduced to a signed writing in order to be enforceable. S.C. Code Ann. § 32-3-10(4) (2007). "To satisfy the Statute of Frauds, every essential element of the contract must be expressed in a writing signed by the party to be compelled." *Fici v. Koon*, 372 S.C. 341, 346, 642 S.E.2d 602, 604 (2007).

"A constructive trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by the one holding the legal title." *Lollis v. Lollis*, 291 S.C. 525, 529, 354 S.E.2d 559, 561 (1987). "A constructive trust results from fraud, bad faith, abuse of confidence, or violation of a fiduciary duty which gives rise to an obligation in equity to make restitution." *Id.* "Fraud is an essential element, although it need not be actual fraud." *Id.* "In order to establish a constructive trust, the evidence must be clear and convincing." *SSI Med. Servs.*, 301 S.C. at 500, 392 S.E.2d at 794.

We affirm the special referee's denial of Carroll's causes of action for breach of contract and interest in and for real estate. First, we find Carroll was not entitled to relief based on a breach of contract because he failed to present evidence proving the existence of contract between him and Mowery. *See S. Glass & Plastics Co.*,

399 S.C. at 491-92, 732 S.E.2d at 209 ("The elements for a breach of contract are the existence of a contract, its breach, and damages caused by such breach."). Although Carroll testified he and Mowery had an agreement that he would renovate the properties, he stated he and Mowery did not have a contract concerning how they planned to manage the properties. Mowery testified she never agreed to compensate Carroll in exchange for his work on the properties and she believed the financial support she offered Carroll during their relationship was fair compensation for his work. *See Player*, 299 S.C. at 105, 382 S.E.2d at 893 ("[I]n order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement."). Although the testimonies of Carroll's sister and brother-in-law suggested Carroll and Mowery agreed to run the business together, the articles of organization for TD Realty did not list Carroll as an organizer of the business and his name was not included on the deeds for any of the properties. Based on the foregoing, we find Carroll failed to present evidence proving an offer and acceptance occurred to form a contract between him and Mowery. *See Roberts*, 327 S.C. at 483, 486 S.E.2d at 773 ("The necessary elements of a contract are an offer, acceptance, and valuable consideration."). Accordingly, we hold the special referee did not err in dismissing Carroll's breach of contract cause of action.

Second, we find Carroll was not entitled to relief based on his interest in and for real estate claim. We find no agreement granting Carroll ownership interest in the properties can be upheld under the Statute of Frauds, which requires contracts for land to be in writing. *See* S.C. Code Ann. § 32-3-10(4) (2007) (codifying the Statute of Frauds and requiring that contracts for the sale of real property be reduced to writing to be enforceable). Carroll testified he and Mowery did not have a written agreement regarding the ownership of the properties and the deeds to the properties were titled in Mowery's name. Additionally, we find Carroll failed to present evidence supporting a constructive trust cause of action because he did not prove Mowery's actions amounted to fraud. *See Lollis*, 291 S.C. at 529, 354 S.E.2d at 561 ("A constructive trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by the one holding the legal title."); *id*. ("Fraud is an essential element[ of constructive trust], although it need not be actual fraud."). Carroll testified he knew Mowery titled the properties in her name and he failed to present evidence showing he and Mowery had a confidential or fiduciary relationship requiring Mowery to inform him she did not transfer the titles to the properties to TD Realty. Based on the foregoing, we hold the special referee did not err in dismissing Carroll's interest in and for real estate cause of action.

**IV.     Quantum Meruit, Unjust Enrichment, and Restitution**

Carroll argues the special referee erred in dismissing his claims for quantum meruit, unjust enrichment, and restitution because Mowery benefited financially from the renovation work he completed on the properties.  He asserts he contributed financially to the renovation of the properties and any difficulty in calculating the contributions each party made was a result of Mowery's failure to properly maintain her records.  We disagree.

"Restitution is a remedy designed to prevent unjust enrichment."  *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 409, 581 S.E.2d 161, 167 (2003).  "The terms 'restitution' and 'unjust enrichment' are modern designations for the older doctrine of quasi-contracts."  *JASDIP Props. SC, LLC v. Est. of Richardson*, 395 S.C. 633, 640, 720 S.E.2d 485, 488 (Ct. App. 2011) (quoting *Ellis v. Smith Grading & Paving, Inc.*, 294 S.C. 470, 473, 366 S.E.2d 12, 14 (Ct. App. 1988)).  "[Q]uantum meruit, quasi-contract, and implied by law contract are equivalent terms for an equitable remedy."  *Id.* (alteration in original) (quoting *QHG of Lake City, Inc. v. McCutcheon*, 360 S.C. 196, 202, 600 S.E.2d 105, 108 (Ct. App. 2004)).

"Implied in law or quasi-contracts are not considered contracts at all, but are akin to restitution which permits recovery of that amount the defendant has been benefitted at the expense of the plaintiff in order to preclude unjust enrichment."  *Costa & Sons Constr. Co. v. Long*, 306 S.C. 465, 468 n.1, 412 S.E.2d 450, 452 n.1 (Ct. App. 1991).  "[Our supreme c]ourt has recognized quantum meruit as an equitable doctrine to allow recovery for unjust enrichment."  *Columbia Wholesale Co. v. Scudder May N.V.*, 312 S.C. 259, 261, 440 S.E.2d 129, 130 (1994).  "Absent an express contract, recovery under quantum meruit is based on quasi-contract."  *Earthscapes Unlimited, Inc. v. Ulbrich*, 390 S.C. 609, 616, 703 S.E.2d 221, 225 (2010).

> To recover on a theory of restitution, the plaintiff must show (1) that he conferred a non-gratuitous benefit on the defendant; (2) that the defendant realized some value from the benefit; and (3) that it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value.

*Sauner*, 354 S.C. at 409, 581 S.E.2d at 167; *see also Earthscapes Unlimited, Inc.*, 390 S.C. at 616-17, 703 S.E.2d at 225 (providing the elements to recover on a theory of restitution apply to claims seeking to recover under the doctrine of quantum meruit).

We hold the special referee did not err in dismissing Carroll's causes of action for unjust enrichment, quantum meruit, and restitution because Carroll failed to present evidence showing Mowery received a benefit from his renovation work. *See Columbia Wholesale Co.*, 312 S.C. at 261, 440 S.E.2d at 130 ("[Our supreme c]ourt has recognized quantum meruit as an equitable doctrine to allow recovery for unjust enrichment."); *Sauner*, 354 S.C. at 409, 581 S.E.2d at 167 ("Restitution is a remedy designed to prevent unjust enrichment."); *id.* (enumerating the elements of a restitution claim, including that the defendant must realize some value from the benefit conferred by the plaintiff); *see also Earthscapes Unlimited, Inc.*, 390 S.C. at 616-17, 703 S.E.2d at 225 (providing the elements to recover on a theory of restitution apply to claims seeking to recover under the doctrine of quantum meruit).  Carroll did not present evidence detailing how his personal and financial contributions to the renovation of the properties raised the value of the properties.  Although Carroll testified he and Mowery used the money from the sale of his boat and his car accident settlement to pay for their living expenses and to renovate the properties, he did not present evidence demonstrating how his money was used in a way that increased the profit Mowery made from the sale and rental of the properties.  Both parties claim to have contributed to the value of the properties and Mowery's real estate business; however, neither could provide sufficient evidence for the court to ascertain the values of their contributions exceeded those of the other.  Therefore, we find insufficient evidence was presented to allow the special referee to determine how much money each party contributed to the renovation projects and their living expenses during the relationship.  Accordingly, we hold the special referee did not err in dismissing Carroll's claims for unjust enrichment, quantum meruit, and restitution.

**CONCLUSION**

Based on the foregoing, the special referee's order dismissing Carroll's causes of action for unjust enrichment, interest in and for real estate, breach of contract, restitution, constructive fraud, breach of trust, and quantum meruit is

**AFFIRMED.**[3]

**KONDUROS and VINSON, JJ., and LOCKEMY, A.J., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.