611 S.E.2d 262

**COLLINS ENTERTAINMENT, INC. f/k/a Collins Entertainment Corp., Respondent,**

v.

**Gary WHITE, Gary Couillard, all individually, and d/b/a Montego Bay, Appellants.**

No. 3935.

Court of Appeals of South Carolina.

Submitted Dec. 1, 2004.

Decided Jan. 31, 2005.

Rehearing Denied April 21, 2005.

548

550

William Gary White, III, of Columbia, for Appellants.

James B. Van Osdell and Charles B. Jordan, Jr., both of Myrtle Beach, for Respondent.

WILLIAMS, J.:

Collins Entertainment, Inc. brought this breach of contract action against Gary White, Gary Couillard, both individually, and d/b/a Montego Bay (collectively Appellants) seeking to collect license fees. The trial court granted Collins a directed verdict on Appellants' counterclaims, and the jury returned a verdict in favor of Collins on its breach of contract claim. We affirm.[1]

## FACTS

In 1997, Collins signed a contract with the proprietors of Montego Bay to place its video gaming machines in the establishment. Shortly before beginning operations, White and Couillard became the main partners of Montego Bay and assumed the rights and obligations under the contract. The contract provided: "Collins shall provide for all machine licenses and/or taxes the costs of which shall be divided equally (50%/50%) between Proprietor and Collins. Proprietor shall reimburse Collins for its share of such costs immediately upon demand."

Collins placed machines in Montego Bay for various periods of time. Appellants were charged a pro rata share of the license fees, but Collins never received payment. According to a Collins employee, Appellants owed $18,687.32 in licensing fees to Collins.

Collins brought the underlying breach of contract action against Appellants, seeking to collect the unpaid fees. Appellants answered and counterclaimed for breach of contract, breach of contract accompanied by a fraudulent act, unfair trade practices, and violation of the Racketeer Influenced and Corrupt Organizations Act (RICO).[2] The answers did not

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. 18 U.S.C.A. §§ 1961 et seq.

specifically plead any affirmative defenses. Collins' complaint was amended to seek pre-judgment interest.

On March 29, 2001, Appellants filed a motion to compel discovery and served it on Collins' former legal office along with Appellants' First Request to Admit. Collins did not respond to the request to admit due to its service on a location at which no attorneys worked. On May 15, 2001, Appellants filed a motion to dismiss as a result of Collins' failure to respond.

On May 25, 2001, Mr. Youmans, who along with Mr. Mongilo was Collins' in-house counsel until 2000, filed a motion to be relieved as counsel and set forth an appropriate address at which he could be reached. On May 31, 2001, Appellants served a Second Request to Admit. Again, they served the former office of Collins' in-house counsel.

On June 29, 2001, Collins' new counsel filed a motion to answer the First Request to Admit. On the same date, an affidavit from Mr. Mongilo was filed with the court indicating no one practiced at the previous address. After a hearing before Judge Baxley, Collins was allowed to answer the First Request to Admit. Specifically, Judge Baxley found: "At the time [Appellants] served these requests, neither Mr. Youmans nor Mr. Mongilo, nor any other attorney operated at that office." Additionally, the court concluded: "This Court recognizes the confusion and difficulty within [Collins'] organization occasioned by the demise of video poker in South Carolina, and the resulting layoffs of the attorneys working within the company."

The court went on to find that Collins' failure to respond was unintentional and allowed Collins to respond. At no time during this hearing did Appellants make Collins or Judge Baxley aware of the Second Request to Admit. Collins did not timely respond to the request by the hearing date, and Appellants knew it was served at the same address as the first.

The first time Appellants made Collins aware of the Second Request to Admit was at the start of trial. The trial court ruled the requests were not deemed admitted for the same reason Judge Baxley ruled the First Request to Admit was not deemed admitted. He found Appellants should have made

the court and Collins aware of the second set of requests and, under the specific circumstances, found the requests would not be used to admit damages.

Additionally, before trial began, the court ruled White could not operate as an attorney and serve as a witness in the case under Rule 3.7 of the Professional Rules of Conduct. The court found it would be prejudicial for him to serve as a witness regarding the contested issue of damages while serving as an attorney for Couillard.

At trial, Bill LaHart, a Collins employee, testified regarding the arrangement between Collins, Montego Bay, and Appellants. He testified the machines were placed in Montego Bay pursuant to the contract, and Appellants were charged a pro rated share of the license fee for each machine while it was in the establishment. He testified the total owed by Appellants for the machines' license fees amounted to $18,687.32.

Couillard testified the license fees were not required to be paid because of a separate agreement reached with another Collins employee named Marshall Armstrong. He testified Collins was attempting to extort money from Appellants. Additionally, he testified Appellants would have shut the machines down and given them back to Collins had they been responsible for the license fees and taxes on the machines.

Couillard testified he maintained a spreadsheet of all of his out-of-pocket expenses. The spreadsheet, however, was not presented at trial. Couillard also asserted he and White would both contribute money whenever it was needed to keep the business afloat, though he did not know the exact amount, nor did he have the checks to support his claims. At one point, however, Couillard did assert that White's contribution may have been "22, 25,000, something like that" and that his "was actually a little bit more."

Collins moved for directed verdict as to Appellants' counterclaims, alleging they failed to offer any proof of damages. The court agreed and directed a verdict on all counterclaims.

Appellants moved to amend the answer to include the affirmative defense of estoppel. Appellants attempted to argue the language used in their breach of contract with fraudulent intent claim could support a defense of estoppel. In the

alternative, Appellants sought to amend to conform to the issues raised at trial. The motion was denied. Appellants also moved for directed verdict as to Collins' breach of contract claim on the grounds Collins failed to produce documents and witnesses, the contract was illegal, and for failing to prove damages. The motion was denied.

Collins' claim for breach of contract went to the jury, which returned a verdict in the amount of $18,687.32. After post-trial motions were filed, the court entered an award in favor of Collins in the amount of $18,687.32 in actual damages, $6,758.58 in pre-judgment interest, and $14,227.65 in attorney's fees and costs. This appeal follows.

## STANDARD OF REVIEW

■ "In ruling on motions for directed verdict or judgment notwithstanding the verdict, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions. The trial court must deny the motions when the evidence yields more than one inference or its inference is in doubt." *Steinke v. South Carolina Dep't of Labor, Licensing & Reg.*, 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999).

■ "An action for breach of contract seeking money damages is an action at law." *Sterling Dev. Co. v. Collins*, 309 S.C. 237, 240, 421 S.E.2d 402, 404 (1992); *R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.*, 343 S.C. 424, 430, 540 S.E.2d 113, 117 (Ct.App.2000). "In an action at law, on appeal of a case tried by a jury, the jurisdiction of this Court extends merely to the correction of errors of law, and a factual finding of the jury will not be disturbed unless a review of the record discloses that there is no evidence which reasonably supports the jury's findings." *Townes Assocs. Ltd. v. City of Greenville*, 266 S.C. 81, 85, 221 S.E.2d 773, 775 (1976).

## ISSUES ON APPEAL

I. Did the trial court err in refusing to deem Appellants' Second Request to Admit admitted when Collins failed to respond?

II. Did the trial court err in refusing to publish both Appellants' first and second requests to admit to the jury?

III. Did the trial court err in granting Collins' motion for directed verdict as to Appellants' counterclaims?

IV. Did the trial court err in failing to dismiss Collins' claim for breach of contract because the contract was an illegal gambling contract under S.C.Code Ann. § 32–1–40 (Supp.2003)?

V. Did the trial court err in failing to allow Appellants to amend their answer to add the affirmative defense of estoppel?

VI. Did the trial court err in failing to find Collins' claim barred by the doctrines of laches or estoppel?

VII. Did the trial court err in prohibiting White from testifying as a witness when he was also acting as an attorney?

## LAW/ANALYSIS

### I & II. Request to Admit

 Appellants contend the trial court erred in failing to deem their second request to admit as admitted when Collins failed to respond. Additionally, they aver the trial court erred in refusing to publish the admittances to the jury. We disagree.

Rule 36(a), SCRCP, provides: "A party may serve upon any other party a written request for the admission ... of the truth of any matters within the scope of Rule 26(b)...." However, an admission may be withdrawn upon application to the court:

> Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admissions fails to satisfy

the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.

Rule 36(b), SCRCP.

In the instant case, Judge Baxley previously found Appellants' First Request to Admit was filed at an office no longer in use and this constituted a sufficient reason for refusing to deem the requests admitted and to allow Collins to file late answers. At the time of the hearing, Appellants' Second Request to Admit was outstanding and the time for Collins to file an answer had expired. Instead of informing the court and Collins of the outstanding request, Appellants waited until the beginning of trial to mention the outstanding requests to Collins and the new judge. We find Appellants cannot now complain of being prejudiced by the refusal to deem the requests admitted because they could have raised the issue before Judge Baxley. *State v. Brannon,* 341 S.C. 271, 275, 533 S.E.2d 345, 347 (Ct.App.2000) ("A party cannot complain of an error induced by the party's own conduct.") (citation omitted).

Collins' attorney denied any damages existed and also denied ever seeing the request to admit. Specifically, he stated: "We don't admit the amount of his damages. If he begins on damages, Your Honor, that is highly contested as far as we're concerned." The court did not prevent Appellants from offering proof of their damages. It simply required Appellants to offer the actual proof and not rely upon the Second Request to Admit. Therefore, Appellants were not prejudiced by the refusal to deem the requests admitted. Under the circumstances, we find the trial court properly ruled on the issue.

Appellants then sought to introduce into evidence the fact that the First Request to Admit was not answered by Collins and, therefore, was deemed admitted prior to Collins being granted the right to respond late to the request. They also sought to introduce the Second Request to Admit, asserting it had been admitted by Collins' failure to respond. We find the trial court properly refused to allow Appellants to publish to the jury Collins' failure to respond.

Appellants rely on *Tuomey Regional Medical Center, Inc. v. McIntosh,* 315 S.C. 189, 432 S.E.2d 485 (1993), for the holding:

> Once an answer to a Request for Admissions is amended under Rule 36, both the initial answer and the amended answer may be published to the jury. The jury may consider the initial answers as evidence, while the party who made such answers "is free to explain why it was made and [amended]." ·

*Id.* at 191, 432 S.E.2d at 487 (citing Wright & Miller, *Federal Practice and Procedure: Civil* § 2264 at 745 (1970) (footnotes omitted)).

In *Tuomey,* the requests were admitted by the party's initial answer. The admitting party, however, then sought to amend its answer asserting it inadvertently provided incorrect information. The trial court granted the amendment, but allowed both sets of answers to be submitted to the jury. *Id.* at 190–191, 432 S.E.2d at 486. *Tuomey* is not similar to the present case where the admission, which was subsequently withdrawn, arose solely from the failure to make a timely response.

In any event, the *Tuomey* case relied on Wright and Miller's *Federal Practice and Procedure* for the rule cited. The full explanation of the rule as it appears in *Federal Practice and Procedure* states:

> The general rule with regard to a pleading that has been withdrawn is that it can no longer be used as a conclusive judicial admission but that it is admissible in evidence at the instance of the adversary as an evidentiary admission, with the party who made the admission free to explain why it was made and withdrawn. The cases have not focused on this question as it applies to a Rule 36 admission. There would be reason to hold that an express admission, later withdrawn, should be treated in the same fashion as a pleading, *but that if the court has permitted an admission through failure to make timely response to be withdrawn, the admission should pass out of the case entirely.*

Wright & Miller, *Federal Practice and Procedure: Civil* § 2264 at 579 (1994) (footnotes omitted) (emphasis added).

■ We find where an admission is made solely by the failure to make a timely response, such admission being later withdrawn, the party is not allowed to publish the admission to the jury. The party may publish the late-filed response,

but may not assert before the jury that the requests were previously admitted. Accordingly, we conclude the trial court properly refused to allow Appellants to publish to the jury the fact that Collins admitted the requests by failing to make a timely response.

### III. Collins' Motion for Directed Verdict

Appellants maintain the trial court erred in granting Collins' motion for directed verdict on the ground that they failed to prove damages. We disagree and find the record is devoid of evidence from which the jury could calculate damages without resulting to speculation or conjecture.

■ First, we note Appellants only address the breach of contract claim in their discussion of evidence of damages. Accordingly, we find they have abandoned their other counter-claims against Collins. *See Bell v. Bennett*, 307 S.C. 286, 294, 414 S.E.2d 786, 791 (Ct.App.1992) (holding an issue which is not argued in the brief is deemed abandoned on appeal); Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.").

■ "In a breach of contract action, damages serve to place the nonbreaching party in the position he would have enjoyed had the contract been performed.... In the normal case, the damage will consist of two distinct elements: (1) out-of-pocket costs actually incurred as a result of the contract; and (2) the gain above costs that would have been realized had the contract been performed." *South Carolina Fed. Sav. Bank v. Thornton–Crosby Dev. Co., Inc.*, 303 S.C. 74, 77, 399 S.E.2d 8, 10–11 (Ct.App.1990). "Generally, in order for damages to be recoverable, the evidence should be such as to enable the court or jury to determine the amount thereof with reasonable certainty or accuracy. While neither the existence, causation nor amount of damages can be left to conjecture, guess or speculation, proof with mathematical certainty of the amount of loss or damage is not required." *Whisenant v. James Island Corp.*, 277 S.C. 10, 13, 281 S.E.2d 794, 796 (1981).

Couillard testified he kept a spreadsheet detailing some of the expenses he and White shared as a result of their business dealings with Collins. What he did not testify to, however, was the amounts listed on the spreadsheet, nor did he present the spreadsheet into evidence. He merely stated that he and White would contribute $125 for one thing or $500 for another. Similarly, Couillard asserted he would write checks for $7,000 or $1,000 or $1,500, but never explained why he wrote the checks or how they came about as a result of Collins' breach of the contract.

Finally, Couillard testified that White's out of pocket business expenses were "about 22, 25,000, something like that," although he admitted he did not know an exact amount. According to Couillard, his contribution would have been more, but again did not offer a specific dollar amount. As before, he failed to relate any of the expenses to damages resulting from a breach of contract by Collins. He simply stated they were out-of-pocket expenses for the business, not that they were expenses related to a breach of contract.

Any calculation of damages by the jury would have been pure speculation. The Second Request to Admit was properly excluded from evidence and none of the testimony presented provided any evidence of an amount of damages attributable to any breach of contract by Collins. Accordingly, we find the trial court properly granted the directed verdict motion.

## IV. Illegal Contract

Appellants contend the contract was an illegal contract under section 32–1–40 of the South Carolina Code. We disagree.

Section 32–1–40 is entitled "Notes or other securities or conveyances given to secure wagers are void." The section specifically provides:

All notes, bills, bonds, judgments, mortgages or other securities or conveyances whatsoever given, granted, entered into or executed by any person whatsoever when the whole or any part of the consideration of such conveyances or securities shall be (a) for any money or valuable thing whatsoever won by cockfighting, horse racing or by gaming or playing at cards, dice tables, tennis, bowls, or other game

whatsoever or by betting on the sides or hands of such as do game at any of the games aforesaid or any other game or games or (b) for the reimbursing or repaying any money knowingly lent or advanced at the time and place of such cockfighting, horse racing or play to any person (i) so gaming or betting as aforesaid or (ii) that shall, during such cockfighting, horse racing or play, so bet shall be utterly void, frustrate and of none effect to all intents and purposes whatsoever.

S.C.Code Ann. § 32–1–40 (1991).

This section does not apply to the contract at hand. Collins did not lend money to Appellants for the purpose of gambling, nor were securities or conveyances made using gambling proceeds. The contract provision required Appellants to pay one-half of the licensing fees due to the State of South Carolina under section 12–21–2720 of the South Carolina Code.

Additionally, enforcement of the contract does not violate public policy. While the contract was in full effect, video poker was a legal enterprise in South Carolina. The obligations, which arose as a result of operating the machines, were created when the games were legal. Enforcement of a provision requiring the payment of license fees, which were properly collected and remitted to the State of South Carolina, is not in derogation of public policy.

## V. Amendment of Answer

Appellants assert the trial court erred in refusing to allow them to amend their answer to allege the affirmative defense of estoppel. We disagree.

Rule 15, SCRCP, allows for the amendment of pleadings:

(a) Amendments. A party may amend his pleading once as a matter of course at any time before or within 30 days after a responsive pleading is served.... Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires and does not prejudice any other party....

(b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment ... the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.

It is well established that a motion to amend is addressed to the discretion of the trial judge, and the party opposing the motion has the burden of establishing prejudice. *Tanner v. Florence County Treasurer,* 336 S.C. 552, 558–59, 521 S.E.2d 153, 156 (1999). The prejudice that Rule 15 envisions is a lack of notice that the new issue is to be tried and a lack of opportunity to refute it. *Id.* Amendments to conform to the proof should be liberally allowed when no prejudice to the opposing party will result. *Soil & Material Eng'rs, Inc. v. Folly Assocs.,* 293 S.C. 498, 501, 361 S.E.2d 779, 781 (Ct.App.1987).

Appellants assert the issue of estoppel was raised in the pleadings under the arguments for breach of contract accompanied by a fraudulent act. We disagree and find that estoppel must be affirmatively pled as a defense and cannot be bootstrapped onto another claim. *See* Rule 8, SCRCP; *Provident Life & Accident Ins. Co. v. Driver,* 317 S.C. 471, 478, 451 S.E.2d 924, 929 (Ct.App.1994) (finding estoppel is an affirmative defense).

Additionally, we find the issue was not tried by consent of the parties. While Appellants contend the comments and assurances made by Marshall Armstrong form the basis of their estoppel claim and these were raised at trial, they also were the grounds of the claim for breach of contract accompanied by a fraudulent act. Collins prepared to defend the breach of contract accompanied by a fraudulent act claim and not a claim of estoppel. Accordingly, Collins sufficiently dem-

onstrated the prejudice envisioned by Rule 15, requiring the court to deny a motion to amend. *See Tanner*, 336 S.C. at 559, 521 S.E.2d at 156. Accordingly, we find the trial court properly denied Appellants' motion to amend the pleadings.

## VI. Laches and Estoppel

■ Appellants contend the trial court erred in failing to dismiss the claim as being barred by the doctrines of laches and/or estoppel. We disagree.

■ As we found above, Appellants failed to plead estoppel as an affirmative defense and the court properly denied their motion to include it as a defense. Additionally, laches is an affirmative defense which must be specifically pled. Rule 8(c), SCRCP. The failure to plead an affirmative defense is deemed a waiver of the right to assert it. *E.g., Adams v. B & D, Inc.*, 297 S.C. 416, 419, 377 S.E.2d 315, 317 (1989). Accordingly, we find the trial court properly refused to dismiss Collins' claims under either theory.

## VII. White as Attorney and Witness

■ Appellants also contend the trial court erred in finding White could not act as both an attorney for Couillard and as a fact witness in this case. We disagree.

Rule 3.7 of the Rules of Professional Conduct, Rule 407, SCACR, provides:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) The testimony relates to an uncontested issue;

(2) The testimony relates to the nature and value of legal services rendered in the case; or

(3) Disqualification of the lawyer would work substantial hardship on the client.

Here, White sought to act as attorney for Couillard as well as a witness regarding damages allegedly incurred as a result of Collins' breach of contract. Collins contested the issue and denied it owed any money to White or Couillard because it denied any breach existed. Therefore, the first exception does not apply. The second exception also does not apply, as the testimony was not in regards to White's service as attorney.

"The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively." *State v. Capps,* 276 S.C. 59, 65, 275 S.E.2d 872, 875 (1981) (Lewis, C.J., dissenting) (quoting Ethical Consideration 5-9 of the Code of Professional Responsibility). Accordingly, we find the trial court did not err in requiring White to choose whether to act as counsel or to be called as a witness during trial.

Finally, the court determined no substantial hardship would be caused by White acting only as a witness and Mr. Robert Rushing, White's law partner, acting as counsel for all involved. Specifically, the court found the case was continued several times due to Mr. Rushing's absence. Mr. Rushing took an active role in at least one motion hearing in addition to being involved in the trial. Thus, we find no hardship would be created if Mr. Rushing were required to take over Couillard's representation.

**AFFIRMED.**

HEARN, C.J. and GOOLSBY, J., concur.