661 S.E.2d 390

Clyde and Nancy MADREN, Respondents,

v.

Thomas H. BRADFORD, Appellant.

No. 4379.

Court of Appeals of South Carolina.

Heard March 5, 2008.

Decided April 28, 2008.

John S. Nichols, of Columbia, W. Scott Palmer, of Santee, for Appellant.

Max G. Mahaffee, of Charleston, for Respondents.

THOMAS, J.

Thomas Bradford appeals the trial court's finding he breached a real estate contract with Clyde and Nancy Madren and the resulting award of $55,000. Bradford also appeals the trial court's finding that Clyde Madren is not barred from bringing suit under South Carolina licensing statutes. We affirm.

## FACTS

In 2002, Clyde and Nancy Madren purchased a tract of land in St. George for $82,000. The Madrens divided the tract into three parcels with houses on two of the parcels while the third parcel was a vacant lot. A house at 703 Raysor Street was situated on one of the three parcels. The Madrens were remodeling the Raysor Street house (House) in August 2002 when Thomas and Miriam Bradford approached them about purchasing the House.

The Madrens and Bradfords entered into a Buy and Sell Residential Real Estate Contract (Contract) on August 31, 2002. The Contract specified October 15, 2002, as the closing date. The Contract was subject to the Bradfords obtaining $120,000 in financing. In order for the Bradfords to secure the necessary financing, the bank required a home appraisal. The Bradfords believed the Madrens would complete several

home renovations before a closing could take place. Thomas Bradford and Nancy Madren communicated numerous times through phone calls and emails regarding renovations, when appraisers could look at the House, and when the closing could occur. Such communications continued past the Contract's October 15 closing date.

On October 31, 2002, the Madrens notified the Bradfords renovations were complete and the House was ready for a "walk-through." Five days later Thomas Bradford responded with an e-mail stating he and his wife no longer intended to purchase the House. According to Thomas Bradford, they chose not to purchase the House because they did not want to extend the closing date any further.

On December 31, 2002, the Madrens brought an action for breach of contract and specific performance [1] against the Bradfords. Bradford [2] moved to dismiss the Madrens' claim on the grounds that Clyde Madren did not have a contractor's license. The trial court denied the motion to dismiss. The trial court found the parties had entered into a binding contract in which time was not of the essence. Due to his emails, the trial court found Thomas Bradford waived compliance with the Contract's closing date. In addition to finding the Bradfords breached the Contract, the trial court further held the Bradfords could not defend their breach based on the parties' failure to meet the agreed closing date. The trial court awarded the Madrens $55,000 in damages. Bradford appealed.

## STANDARD OF REVIEW

On appeal of a case tried without a jury, the appellate court's jurisdiction is limited to correction of errors at law. *Epworth Children's Home v. Beasley*, 365 S.C. 157, 164, 616 S.E.2d 710, 714 (2005). The judge's findings are equivalent to a jury's findings in a law action. *King v. PYA/Monarch, Inc.*, 317 S.C. 385, 389, 453 S.E.2d 885, 888 (1995). Questions regarding credibility and weight of evidence are exclusively

---

1. The Madrens later abandoned their specific performance claim because the House was in foreclosure.

2. Miriam Bradford passed away before the trial of this action.

for the trial judge. *Sheek v. Crimestoppers Alarm Sys.,* 297 S.C. 375, 377, 377 S.E.2d 132, 133 (Ct.App.1989). The appellate court will not disturb the trial court's findings of fact as long as they are reasonably supported by the evidence. *Epworth,* 365 S.C. at 164, 616 S.E.2d at 714.

## LAW/ANALYSIS

### I. Contractor's License

Bradford argues the trial court erred in denying his motion to dismiss based on Section 40–11–30 of the South Carolina Code (2006). Specifically, Bradford argues the Contract should not be enforced because Clyde Madren, in his sole proprietorship, did not possess a contractor's license. We find this affirmative defense was not appropriately pled.

Approximately one month before the trial commenced, Bradford filed [3] a motion to dismiss arguing Clyde Madren did not possess a contractor's license as required by South Carolina Code Section 40–11–30, et seq. (1976). Bradford further argued the Madrens' action was barred under South Carolina licensing statutes that state, "[a]n entity which does not have a valid license as required by this chapter may not bring an action either at law or in equity to enforce the provisions of a contract." S.C.Code Ann. § 40–11–370 (1976). Bradford had filed his answer and counterclaim a year and nine months prior with no mention of any licensing statute. Bradford did not file an amended answer asserting any affirmative defenses in the interim. At the beginning of the trial, the trial court denied Bradford's motion to dismiss based on the lack of a contractor's license. A post-trial Rule 59(e) motion to reconsider was also denied.

A party, in replying to a preceding pleading, shall affirmatively set forth his defenses to the opposing party's complaint. Rule 8(c), SCRCP. "Every defense, in law or fact, to a cause of action in any pleading ... shall be asserted in the responsive pleading thereto...." Rule 12(b), SCRCP. Generally, affirmative defenses to a cause of action in any pleading must be asserted in a party's responsive pleading. *Strickland v. Strickland,* 375 S.C. 76, 85, 650 S.E.2d 465, 470

---

**3.** Bradford's counsel at trial differed from his counsel on appeal.

(2007) (citing *Wright v. Craft*, 372 S.C. 1, 20–21, 640 S.E.2d 486, 497 (Ct.App.2006)). Statutory prohibition is in the nature of an affirmative defense precluding enforcement of a contract and should be pled. *Costa and Sons Const. Co. v. Long*, 306 S.C. 465, 469, 412 S.E.2d 450, 453 (Ct.App.1991) (citing Rule 8(c), SCRCP).

■ "The failure to plead an affirmative defense is deemed a waiver of the right to assert it." *Whitehead v. State*, 352 S.C. 215, 220, 574 S.E.2d 200, 202 (2002). Rule 15(b), SCRCP, provides an exception to the waiver rule by permitting a party to amend his pleadings to conform to the evidence. No such motion was ever made by Bradford. We find Bradford should not be able to argue for a potential benefit from an affirmative defense without his being required to affirmatively plead it. *See Parrish v. Allison*, 376 S.C. 308, 656 S.E.2d 382 (2007) (Shearouse Adv. Sh. No. 43 at 58), 376 S.C. 308, 656 S.E.2d 382 (Ct.App.2007). We affirm the trial court's denial of the motion on this basis.[4]

## II. Extension of Closing Date

■ Bradford next contends the trial court erred in ruling that by his action, conduct, and written word, Bradford agreed to extend the closing date beyond October 28, 2003. We disagree.

■ "A written contract may be modified by the parties thereto in any manner they choose, notwithstanding, agreement prohibiting its alteration except in a particular manner." *Evatt v. Campbell*, 234 S.C. 1, 6–7, 106 S.E.2d 447, 450 (1959). Additionally:

It is well established in this state that time is not of the essence of a contract to convey land unless made so by its terms expressly or by implication. When the contract does not include a provision that "time is of the essence," the law implies that it is to be done within a reasonable time. In equity, strict compliance with time limits contained in a

---

4. This court may affirm the trial court based on any grounds found in the record. Rule 220(c), SCACR; *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 418, 526 S.E.2d 716, 722 (2000).

contract will not ordinarily be enforced, except with regard to option contracts.

*Faulkner v. Millar,* 319 S.C. 216, 219–20, 460 S.E.2d 378, 380 (1995) (citations omitted).

▪ The determination of whether Bradford's actions constituted waiver is a question of fact. *See Hobgood v. Pennington,* 300 S.C. 309, 314, 387 S.E.2d 690, 693 (Ct.App.1989) ("Where time is not originally of the essence, it may be made so by one party giving notice to the other that he will insist on performance by a certain date, provided the time allowed by the notice is reasonable, which is a question of fact for the jury depending on the circumstances of the particular case."); *Atkinson v. Atkinson,* 279 S.C. 454, 455, 309 S.E.2d 14, 15 (Ct.App.1983) (stating a finding of fact depends on a court's decision of "whether a certain event either did or did not occur or that a particular circumstance either did or did not exist.") Therefore, the issue before us is whether the trial court's finding, that Bradford's conduct waived strict compliance, is reasonably supported by evidence contained in the record. *Epworth Children's Home v. Beasley,* 365 S.C. 157, 164, 616 S.E.2d 710, 714 (2005). We find the record contains such support.

Although the Contract stated the "Closing Date shall be October 15, 2002," it did not indicate time was of the essence. Additionally, the Contract stated, "[b]uyer shall notify Seller or listing agent in writing, by 12:00 noon 10 days from date Buyer is notified house is complete of any deficiencies revealed by inspection." The Bradfords entered into the Contract understanding a lot of work still needed to be completed on the House. Furthermore, Clyde Madren testified he told the Bradfords, "[W]ith any renovation, when you get into it, you don't know what you're going to find beyond the next wall, and there, there could be some slow downs." From the beginning the Bradfords knew the completion of the renovations would actually set the closing date.

Numerous emails between the parties also evidence the agreed upon changes in the closing dates. In one particular example, on October 21, 2002, seven days after the closing date of the Contract, Bradford emailed Nancy Madren after his mortgage company's appraiser had not finished the ap-

praisal. Bradford wrote, "[i]n light of this, doesn't look like we can close this week. Monday the 28th is the earliest target." In another email Bradford wrote, "[w]hen you have a schedule for finishing the remaining items, please furnish it, and your *estimated closing date* so we can set up another." (emphasis added). On October 31, 2002, the Madrens notified Bradford the renovations were complete and the house was ready for a walk-through. In response, Bradford sent an email stating he and his wife decided against purchasing the House. By this time, the Madrens had complied with Bradford's many renovation requests. Consequently, Bradford's own requests further delayed the closing date.

We hold the aforementioned evidence reasonably supports the trial court's finding that Bradford's conduct modified the closing date in his real estate contract with the Madrens. Accordingly, we affirm the trial court's ruling.

### III. Amount of Damages

Bradford contends the trial court erred in awarding damages of $55,000 to the Madrens. Bradford argues the figure was not supported by sufficient evidence and was instead based on surmise and speculation. We disagree.

When calculating damages for breach of contract, damages should place a nonbreaching party in the position he would have enjoyed had the contract been performed. *Collins Entm't, Inc. v. White*, 363 S.C. 546, 559, 611 S.E.2d 262, 268–69 (Ct.App.2005). Generally, damages will consist of "(1) out-of-pocket costs actually incurred as a result of the contract; and (2) the gain above costs that would have been realized had the contract been performed." *Id.* at 559, 611 S.E.2d at 269. Though a party need not prove damages with mathematical certainty, the evidence should allow a court to reasonably determine an appropriate amount. *Yadkin Brick Co. v. Materials Recovery Co.*, 339 S.C. 640, 646, 529 S.E.2d 764, 767 (Ct.App.2000). Furthermore, an amount of damages cannot be left to conjecture, guess, or speculation. *Collins*, 363 S.C. at 559, 611 S.E.2d at 269.

In the present action, Clyde Madren testified the couple invested $40,000 of labor and materials into the home. Madren also testified he and his wife purchased the entire tract

of land for $82,000 and subdivided it into three separate parcels, one of which contained the House. Of the $82,000 originally spent to purchase the single tract, Madren attributed $25,000 of the purchase price to the Raysor Street house. The trial court's order explained the $55,000 in damages was calculated by subtracting the Madrens' original purchase price for the House ($25,000) and the Madrens' estimated cost of labor and materials ($40,000) from the Contract's purchase price of the House ($120,000).

Additionally, Bradford argues Clyde Madren arbitrarily assigned the $25,000 purchase price to the Raysor Street home, and consequently the $55,000 in damages is without basis. However, Bradford offered no evidence for the value of the House when it was purchased by the Madrens, so he cannot now protest the trial court's adoption of Madren's value, as it was the only value offered to the court. *Hough v. Hough,* 312 S.C. 344, 347, 440 S.E.2d 387, 389 (Ct.App.1994) (holding a husband who failed to present any evidence on issue of valuation of marital estate could not complain on appeal that trial court erred in its valuation of the estate).

We find the trial court properly calculated damages based on the criteria set forth in *Collins,* 363 S.C. at 559, 611 S.E.2d at 268–9. Additionally, we believe Clyde Madren's testimony amounted to evidence from which the trial court could reasonably determine an appropriate damage award under *Yadkin,* 339 S.C. at 646, 529 S.E.2d at 767. "In a law case tried without a jury, questions regarding credibility and weight of evidence are exclusively for the trial judge." *Sheek v. Crimestoppers Alarm Systems,* 297 S.C. 375, 377, 377 S.E.2d 132, 133 (Ct.App.1989). We therefore defer to the trial court's decision to believe Clyde Madren's testimony regarding financial figures and use those figures in calculating damages.

Accordingly, the order of the trial court is

**AFFIRMED.**

HEARN, C.J., and KITTREDGE J., concur.