703 S.E.2d 221

**EARTHSCAPES UNLIMITED, INC., Respondent,**

v.

**Richard F. ULBRICH, Anne Ulbrich, J.E. Black Construction Co., Inc., Bluffton Glass & Mirror, Inc., Livingoods Inc., and K & K Plumbing, Defendants**

of whom Richard F. Ulbrich and Anne Ulbrich are Appellants.

No. 26903.

Supreme Court of South Carolina.

Heard Oct. 20, 2010.
Decided Dec. 13, 2010.

610

Karl D. Twenge, of Twenge & Twombley, of Beaufort, for Appellants.

John R.C. Bowen, of Laughlin & Bowen, of Hilton Head Island, for Respondent.

Chief Justice TOAL.

This action was commenced by Earthscapes Unlimited, Inc. (Respondent) in February 2006 by service of a summons, complaint, and lis pendens on Richard and Ann Ulbrich (Appellants) seeking foreclosure of a mechanic's lien, alleging breach of contract, and in the alternative, seeking judgment under quantum meruit. Appellants' answer included a third-party claim against J.E. Black Construction Company, Inc. (J.E. Black). Respondent filed an amended complaint and lis pendens adding all other mechanic's lien claimants as parties. On September 7, 2007, the circuit court entered an order in which it found J.E. Black to be in default as to all parties for failing to comply with discovery and failure to obtain counsel. On December 28, 2007, the circuit court consolidated several pending cases involving mechanic's liens seeking foreclosure on Appellants' property, but the circuit court did not include this case in that consolidation. On June 12, 2008, this case was tried without a jury resulting in an award for Respondent in the amount of $26,342.80 in principal damages, pre-judgment interest of $5,548.96, and costs and attorney's fees of $19,761.74. This appeal followed. This Court certified this case for review pursuant to Rule 204(b), SCACR.

FACTS

Respondent is a small landscape company doing business primarily in Berkeley Hall Plantation (Berkeley) in Bluffton. Respondent is not a licensed general contractor. On December 30, 2004, Appellants contracted with J.E. Black to build their home inside Berkeley for $1,100,000. Within the contract was a $30,000 allowance for landscaping and an irrigation system. Construction within Berkeley is regulated by an Architectural Review Board (ARB). In order to receive a permit to construct a home in Berkeley it is necessary to obtain approval of the ARB. The ARB requires that all homes be landscaped, that a landscape plan be submitted, and a landscape fee be paid in order to receive a building permit.

During the summer of 2005, when the house was under construction, Richard Ulbrich (Ulbrich), Appellant homeowner, met Donnie Ward (Ward), Respondent's owner and operator. How the two first met is in dispute. Ulbrich testified he was introduced to Ward at Joseph Black's (Black) house, where Respondent provided landscaping services. Black is the owner of the general contractor J.E. Black. Ward testified he met Ulbrich one day as he was performing landscaping services on the house adjacent to Appellants' lot. Ward also testified that Ulbrich asked if he would landscape Appellants' yard and draw up a landscape design for the home.

Respondent submitted a proposal to Ulbrich for landscaping at the price of $32,677.89. After reviewing the proposal, Ulbrich asked Respondent if he could perform the work for $30,000. Respondent agreed to do the work for $30,000. Respondent next obtained the landscaping permit from the ARB and commenced work on Appellants' property. Respondent's work on the property included ordering and installing plant materials for the home, installing an irrigation system, and installing landscape lighting. The alleged contract for this work was never put in writing. Ward testified he failed to put the contract in writing because of the friendship he forged with Ulbrich, hence, he did the work "on a handshake instead of a signature."

During the course of landscaping, Ulbrich asked Respondent to provide some additional work not included in the

original proposal. This extra work included the installation of drainage for water runoff, adding additional plant materials, and the installation of a well for yard irrigation.

On December 9, 2005, Respondent presented a bill to Appellants in the amount of $33,555. This bill included the agreed upon charge of $30,000 for the original work, $2,950 for the irrigation well, $320 for additional plants, and $285 for the extra drainage work. On December 23, 2005, Ulbrich issued a check to Respondent in the amount of $3,270.[1] Ulbrich then telephoned Respondent and informed him that he had paid the remainder of the landscaping bill to the general contractor J.E. Black, that he would not pay Respondent's bill, and that Respondent should ask J.E. Black for the money. Respondent served its mechanic's lien dated January 18, 2006 on Appellants, and when no payment was forthcoming, filed this action on February 16, 2006.

The circuit court held Respondent had a valid and subsisting mechanic's lien on Appellants' property. The circuit court distinguished the facts of the present case from those in *Skiba v. Gessner*, 374 S.C. 208, 648 S.E.2d 605 (2007). The circuit court held Respondent actually performed labor and supplied materials that attached to and became part of the real estate adding to its value. However, in *Skiba* the party did not receive the protection of the mechanic's lien statutes where the worker merely prepared land for landscaping and did no work relating to a building or structure.[2] The circuit court also found there was a contract between Appellants and Respondent for the landscaping work performed on Appellants' property. The circuit court noted that absent its ruling on the mechanic's lien, it would have found against Appellants for the same amount of money under the quantum meruit claim.

---

1. While a payment of $3,270 would leave a balance of $30,285, Respondent's claim in the circuit court sought $30,000. The circuit court awarded $26,342.80 in principal damages to Respondent after subtracting for a credit due to Appellants and for costs Appellants incurred.

2. Appellants did not raise the *Skiba* case until their Rule 59(e) motion. It appears from the record that the circuit court judge's order of June 20, 2008 is the first mention of issues pertaining to *Skiba*.

## Issues

I. Did the circuit court lack subject matter jurisdiction over the action?

II. Did the circuit court err in finding unjust enrichment to be an alternate form of recovery?

III. Did the circuit court err in finding that there was a contract between Appellants and Respondent?

IV. Did the circuit court err in finding the mechanic's lien statutes applied?

## Law/Analysis

### I. Subject Matter Jurisdiction

■■■■ Appellants argue the circuit court lacked subject matter jurisdiction over the action. Appellants misconstrue this issue as an issue of subject matter jurisdiction. "[S]ubject matter jurisdiction refers to a court's constitutional or statutory power to adjudicate a case." *Johnson v. S.C. Dep't of Prob., Parole, & Pardon Servs.*, 372 S.C. 279, 284, 641 S.E.2d 895, 897 (2007) (citation omitted). The circuit court clearly has subject matter jurisdiction to hear disputes related to the mechanic's lien statutes and construction contracts. The proper manner to couch this issue would be whether there is a statutory prohibition against the enforcement of the alleged contract and mechanic's lien at issue. However, because Appellants did not raise section 40–11–370 of the South Carolina Code as an affirmative defense at any stage in the proceedings below, we find this affirmative defense was not properly pled.

As noted above, the circuit court held Respondent had a valid and subsisting mechanic's lien on Appellants' property by distinguishing *Skiba* and finding Respondent actually performed labor and supplied materials that attached to and became part of the real estate adding to its value. Appellants then submitted a Rule 59(e) motion to reconsider, arguing that the circuit court should dismiss Respondent's claims because Respondent did not have a license required by sections 40–11–20, –30 and –370 of the South Carolina Code.[3] Hence, Re-

---

3. Regarding license requirements necessary to contract work, section 40–11–30 of the South Carolina Code states:

spondent could not pursue a claim at law or in equity. Appellants never made a motion to amend their pleadings to incorporate the arguments presented in their Rule 59(e) motion.

■■■ A party in replying to a preceding pleading shall affirmatively set forth his or her defenses. Rule 8(c), SCRCP. "Every defense, in law or fact, to a cause of action in any pleading ... shall be asserted in the responsive pleading thereto...." Rule 12(b), SCRCP; *see also Strickland v. Strickland,* 375 S.C. 76, 85, 650 S.E.2d 465, 470 (2007) ("[A]ffirmative defenses to a cause of action in any pleading must generally be asserted in a party's responsive pleading."). "Statutory prohibition is in the nature of an affirmative defense precluding enforcement of a contract and should be pled." *Madren v. Bradford,* 378 S.C. 187, 193, 661 S.E.2d 390, 393 (Ct.App.2008) (citing *Costa and Sons Constr. Co. v. Long,* 306 S.C. 465, 469, 412 S.E.2d 450, 453 (Ct.App.1991)); *see also Skiba,* 374 S.C. at 210, 648 S.E.2d at 606 (noting that section 40–11–370 is an affirmative defense). "The failure to plead an affirmative defense is deemed a waiver of the right to assert it." *Whitehead v. State,* 352 S.C. 215, 220, 574 S.E.2d 200, 202 (2002). Rule 15(b), SCRCP provides an exception to the

No entity or individual may practice as a contractor by performing or offering to perform contracting work for which the total cost of construction is greater than five thousand dollars for general contracting or greater than five thousand dollars for mechanical contracting without a license issued in accordance with this chapter. "General construction" is defined as "the installation, replacement, or repair of a building, structure, highway, sewer, grading, asphalt or concrete paving, or improvement of any kind to real property." S.C.Code Ann. § 40–11–20(8) (2001). "General contractor" is defined as "an entity which performs or supervises or offers to perform or supervise general construction." *Id.* § 40–11–20(9). A contractor's failure to hold a license required by section 40–11–30 is governed by section 40–11–370 of the South Carolina Code, which provides in pertinent part:

(A) It is unlawful to use the term "licensed contractor" or to perform or offer to perform general or mechanical construction without first obtaining a license as required by this chapter.

. . . .

(C) An entity which does not have a valid license as required by this chapter may not bring an action either at law or in equity to enforce the provisions of a contract. An entity that enters into a contract to engage in construction in a name other than the name that appears on its license may not bring an action either at law or in equity to enforce the provisions of the contract.

waiver rule by permitting a party to amend his or her pleadings to conform to the evidence. *Madren*, 378 S.C. at 193, 661 S.E.2d at 393.

In *Madren*, there was a motion to dismiss prior to trial and a post-trial Rule 59(e) motion, both arguing that sections 40–11–30 and –370 precluded a contract from being enforced because the opposing party did not have a contractor's license. *Id.* at 192, 661 S.E.2d at 393. However, the party making those motions never made a motion to amend its pleadings. *Id.* at 193, 661 S.E.2d at 393. The court of appeals affirmed the trial court's denial of those motions on the basis that the party making those motions "should not be able to argue for a potential benefit from an affirmative defense without his being required to affirmatively plead it." *Id.* (citation omitted).

■ In this case, there was a Rule 59(e) post-trial motion filed arguing that section 40–11–370 of the South Carolina Code precludes the enforcement of this action. However, Appellants never amended their pleadings to incorporate this affirmative defense. Appellants cannot benefit from an affirmative defense that was never pled. Hence, we affirm the circuit court's denial of Appellants' Rule 59(e) post-trial motion.

## II. Quantum Meruit

Appellants argue the trial court erred in finding quantum meruit to be a basis upon which Respondent can recover. We disagree.

■ An action based on a theory of quantum meruit sounds in equity. *Columbia Wholesale Co., Inc. v. Scudder May N.V.*, 312 S.C. 259, 261, 440 S.E.2d 129, 130 (1994) (citation omitted). When reviewing an action in equity, an appellate court reviews the evidence to determine facts in accordance with its own view of the preponderance of the evidence. *Denman v. City of Columbia*, 387 S.C. 131, 140, 691 S.E.2d 465, 470 (2010). Absent an express contract, recovery under quantum meruit is based on quasi-contract. *Columbia Wholesale Co., Inc.*, 312 S.C. at 261, 440 S.E.2d at 130. The elements of a quantum meruit claim are: (1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the

defendant of the benefit under conditions that make it unjust for him to retain it without paying its value. *Id.*

In this case, the circuit court held absent the mechanic's lien claim, "I would still find in favor of the plaintiff and against the defendant for the same amount of money under the *quantum meruit*, or unjust enrichment claim." (italics in original). The benefit conferred by Respondent to Appellants was the work performed by Respondent on Appellants' property. Appellants have realized and enjoyed the benefit of the work performed by Respondent. Finally, allowing Appellants to retain the benefit of Respondent's work without paying its value under the circumstances of this case would be unjust. Hence, we find under the theory of quantum meruit Appellants owe Respondent the same amount of damages awarded at the circuit court.

### III.  Contract and Mechanic's Lien

Because an appellate court need not address remaining issues when disposition of a prior issue is dispositive, an analysis of the remaining issues in unnecessary. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999). Because we affirm the circuit court on the quantum meruit claim, it is not necessary to determine whether there was an express contract or whether the mechanic's lien statutes apply to this factual scenario.[4]

### CONCLUSION

Because Appellants never amended their pleadings to incorporate their affirmative defense, we affirm the circuit court's denial of Appellants' Rule 59(e) post-trial motion. Moreover, we find that Appellants owe Respondent the same amount of damages awarded at the circuit court under the theory of quantum meruit.

BEATTY, KITTREDGE and HEARN, JJ., concur.
PLEICONES, J., concurring in result only.

---

4.  While the circuit court did find there was a contract between the two parties in this action, it never awarded damages because of a breach of that contract. Rather, the circuit court chose the theory of quantum meruit as an alternate remedy.