**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Larry Blackwell, #176790, Appellant,

v.

South Carolina Department of Probation, Parole, and Pardon Services, Respondent.

Appellate Case No. 2021-001162

———

Appeal From The Administrative Law Court
Harold W. Funderburk, Jr., Administrative Law Judge

———

Unpublished Opinion No. 2024-UP-211
Heard April 2, 2024 – Filed June 12, 2024

———

**REVERSED AND REMANDED**

———

Jonathan Edward Ozmint, of The Ozmint Firm, LLC, of Greenville; John H. Blume, III, of Law Office of John Blume, of Columbia; and Hannah Lyon Freedman and Allison Franz, both of Justice 360, all of Columbia, for Appellant.

General Counsel Matthew C. Buchanan, of Columbia, for Respondent.

———

**PER CURIAM:** Appellant Larry Blackwell challenges the Administrative Law Court's (ALC) order dismissing his appeal from a decision of the South Carolina Board of Paroles and Pardons (the Board) denying his application for parole. Blackwell seeks relief from the Department of Probation, Parole & Pardon Services' (the Department) denial of his request to review his parole file, its presentation of inaccurate information to the Board, and its discrediting of Blackwell's effort to correct that information. We reverse and remand.

## FACTS/PROCEDURAL HISTORY

In preparing for Blackwell's then-upcoming parole hearing on April 14, 2021, Blackwell's counsel discovered the existence of an opposition letter submitted by Barry J. Barnette, Solicitor for the Seventh Judicial Circuit, to the Director of Victim Services for the Department. Solicitor Barnette had sent nearly identical letters to the Department prior to three previous parole hearings for Blackwell. Solicitor Barnette had prosecuted Blackwell for murder in 1992, and Blackwell was ultimately convicted of murder and sentenced to life in prison. In his opposition letter, Solicitor Barnette described the murder and stated that it occurred "about 2 weeks after [Blackwell] finished serving a drug-related prison sentence." Solicitor Barnette also expressed his opinion that Blackwell had "proven his inability to be rehabilitated and conform to the laws of our state. He needs to spend the rest of his life behind bars." Solicitor Barnette then added,

> I prosecuted the murder case while working as an assistant solicitor[,] and the court proceeding is one I will never forget due to the violent manner of the death and the fact that Mr. Blackwell threatened to *kill me and my wife* after he was sentenced. Fellow inmates in the Department of Corrections reported the threats[,] and the State Law Enforcement Division *investigated* the matter.

(emphases added). Notably, a previous, unsigned version of this letter written on October 4, 2014, stated that the South Carolina Law Enforcement Division (SLED) "is *presently investigating* the matter." (emphasis added). Otherwise, the substance of the allegations in the 2014 letter is the same as in the opposition letters that Solicitor Barnette sent to the Department in 2016, 2019, and 2021.

The 2014 investigation referenced in Solicitor Barnette's letter began after SLED received notice of a letter sent to Solicitor Barnette by an inmate, Alan Yates, who housed at the same facility where Blackwell was housed. In Yates's

correspondence, he identified himself as "Terry Buchanan," although there was no inmate listed on the South Carolina Department of Corrections website with that name. Yates's letter stated that Blackwell said he "wish[ed] he could get [Solicitor Barnette's] wife drunk, have sex, and video it and sen[d] it to [Solicitor Barnette]." Yates did not allege that Blackwell had threatened to kill Solicitor Barnette or his wife.

When SLED agents interviewed Blackwell, he denied making any of the statements referenced in Yates's letter to Solicitor Barnette and indicated that Yates had sent out similar letters in the past and "was always trying to improve his conditions in the prison by fabricating information on other inmates." When SLED Agent R.W. Charles confronted Yates, he admitted to sending the letter in question and then asked Agent Charles "for some consideration for informing on Blackwell" as Yates wanted "to be moved to Tyger River [Correctional Institute]."

SLED provided a copy of its investigative report to Solicitor Barnette in December 2014 and closed the investigation in January 2015 after the Attorney General's office declined to prosecute Blackwell. By that time, Solicitor Barnette had already sent an opposition letter to the Department just prior to Blackwell's October 2014 parole hearing. After learning of Solicitor Barnette's opposition letters, counsel for Blackwell contacted the Department's General Counsel to request that he inform the Board of the contents of the SLED report and to change the Department's procedures to ensure that inaccurate information is not presented to the Board.

The Department's counsel contacted Solicitor Barnette and later advised Blackwell's counsel that Solicitor Barnette stood by his statements to the Board. The Department's counsel also indicated that the Department's investigative file "contain[ed] no reference to the allegations of threats on behalf of [Blackwell] to Solicitor Barnette. The only reference to the threats are within [Solicitor] Barnette's own letters to the Board."[1] The Department declined to refute Solicitor Barnette's statement that Blackwell had threatened to kill him and his wife and advised Blackwell's counsel that he was in the best position to present the SLED report to the Board.

During his presentation at the parole hearing, Blackwell's counsel advised the Board of the SLED report's existence and stated that the Department's

_____

[1] As we previously stated, Solicitor Barnette's letters were addressed to the Director of Victim Services for the Department.

representatives had known about the report for six years without providing it to the Board.  Immediately after the Board voted to deny parole, one of the members stated that she "would like a follow up from the [Department] regarding . . . [counsel's] allegations about [the] SLED report."  In response, the Department's counsel stated,

> All right, well, [counsel] contacted me and provided me with information about that SLED report, provided me that SLED report.  The allegation that he says that we're burying this, we were not aware of this SLED report until [counsel] provided this to me.  It pertains essentially to the allegations that are listed in Solicitor Barnett[e]'s letters in opposition.  After reviewing the SLED report[,] I saw that there . . . was no recanting of the allegations, I spoke with Solicitor Barnett[e] about this, he stands by his statements to the [B]oard.  And in that case[,] because this did not appear in the packet that [the Department] prepared, and it was only within [Solicitor] Barnett[e]'s letters, we felt that . . . what[ counsel] wanted was . . . for us to essentially refute or counter Solicitor Barnett[e]'s statements, and we are not in the position to do that.  We do not feel that we should get involved in refuting anything that a victim or a witness or a[n] interested party like a solicitor or a judge.  That's, therefore[,] we felt that the proper position, or proper individual to do that would be [counsel] himself.  So that's why we, as the [D]epartment, . . . did not comment on this . . . matter.  And then, knowing full well that [counsel] is fully capable of explaining his client's position regarding those allegations.

Subsequently, the Board member who inquired about the SLED report indicated that she wanted to view the report and the letter written by Yates.  Another representative of the Department responded that in order to provide the report to the Board, she needed

> to make sure we're clear on reviewing the SLED report, this is not part of the inmate's record, it is not part of the investigation that was provided to the [B]oard.  This is simply something that his attorney supplied to us in order

to refute a statement of admission and we don't investigate
or legitimize statements of opposition.

The Board's chair asked the representative if she could send the report to the Board later that same day, and she responded, "Yes, but again[,] the SLED report was provided by the inmate's attorney, not officially from SLED, and it needs to be reviewed as such."

The Board's chair then announced that the Board would "delay the final vote . . . until after one of the breaks when . . . all of the [B]oard has had a chance to review[] the SLED report." After the break, the chair asked the other Board members if they had a chance to review the SLED report. The Board member who first inquired about the SLED report stated that she had reviewed the report and she stood by her vote, and the other Board members remained silent. The Board then voted to deny reconsideration of its earlier vote tally.

In its written decision, the Board listed five specific grounds for denial in its "FINDINGS OF FACT": (1) Nature And Seriousness Of Current Offense; (2) Indication Of Violence In This Or Previous Offense; (3) Use Of Deadly Weapon In This Or Previous Offense; (4) Criminal Record Indicates Poor Community Adjustment; and (5) Failure To Successfully Complete A Community Supervision Program. Item (4) apparently pertains to the fact that, according to Solicitor Barnette, the murder for which Blackwell is now serving time occurred "about 2 weeks after he finished serving a drug-related prison sentence." This is consistent with Blackwell's presentation to the Board and with the records of the Department of Corrections, which indicate that Blackwell was first admitted on May 22, 1991, before the date of the murder for which he is currently serving time, and the start date for his sentence for murder was May 22, 1992. Item (5) apparently pertains to his February 7, 1992 conviction for violating the terms of his supervised furlough.

Blackwell filed an appeal with the ALC, but the ALC dismissed the appeal, citing section 1-23-600(D) of the South Carolina Code (Supp. 2023) for the proposition that this statute excludes routine parole denials from the ALC's jurisdiction.[2] This appeal followed.

---

[2] Section 1-23-600(D) provides, in pertinent part:

> An administrative law judge shall not hear . . . an appeal
> *involving the denial of parole to a potentially eligible*

## STANDARD OF REVIEW

In appeals from the ALC, this court

> may affirm the decision or remand the case for further proceedings; or, it may reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:
>
> > (a) in violation of constitutional or statutory provisions;
> >
> > (b) in excess of the statutory authority of the agency;
> >
> > (c) made upon unlawful procedure;
> >
> > (d) affected by other error of law;
> >
> > (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> >
> > (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C. Code Ann. § 1-23-610(B).

## LAW/ANALYSIS

## I.      Inaccurate Information

Blackwell argues that his due process rights were violated by the presentation of Solicitor Barnette's letter to the Board because the letter's statement that Blackwell

---

> *inmate* by the Department of Probation, Parole and Pardon Services.

(emphasis added).

threatened to kill Solicitor Barnette and his wife was inaccurate. Blackwell also argues that the Department violated his due process rights by discrediting his effort to challenge the inaccurate statement in Solicitor Barnette's letter. Blackwell contends that statements made by the Department's representatives, in response to a Board member's inquiry about the SLED report, denigrated that report and implied that the report addressed death threats.

We do not view the statements of the Department's representatives at the parole hearing as an attempt to discredit the SLED report. Rather, we view these statements as expressing the Department's position that (1) it must appear neutral in its role as an investigator for the Board and (2) it must advise the Board of the source of any document it provides to the Board out of regard for the Board's need to limit its consideration to only those documents that are authentic. These concerns are reasonable.

We acknowledge the troubling nature of the Department's reference to the SLED report as corresponding to Solicitor Barnette's allegation that Blackwell threatened to kill him. The SLED report includes a copy of Yates's letter to Solicitor Barnette, in which Yates alleged that Blackwell "wish[ed] he could get [Solicitor Barnette's] wife drunk, have sex, and video it and sen[d] it to [Solicitor Barnette]." The SLED report did not include an allegation from Yates or any other inmate that Blackwell had threatened to kill Solicitor Barnette or his wife. Yet, Solicitor Barnette stated in his letter to the Board that Blackwell "threatened to kill [him] and [his] wife." This was not a reference to a threat independent of the threat investigated by SLED. Rather, Solicitor Barnette referenced the alleged threat to kill him as having been conveyed by at least one other inmate and stated that SLED investigated the threat.

Therefore, Blackwell was concerned about not only the falsity of Yates's allegations in his letter to Solicitor Barnette but also Solicitor Barnette's misinterpretation of Yates's allegations. Disturbingly, in his written and verbal communications, the Department's counsel displayed a lack of awareness of Solicitor Barnette's misinterpretation. Nonetheless, during the hearing, the Board gave Blackwell's counsel ample opportunity to address Yates's allegations and Solicitor Barnette's misinterpretation. Further, the Board members who were present at the hearing were given an opportunity to review the SLED report themselves and to reconsider their votes in light of the report. Therefore, as to this particular parole hearing, Blackwell was not prejudiced by Yates's allegations or Solicitor Barnette's misinterpretation.

## II.    Access to Parole File

Blackwell argues that the Department is required to allow parole applicants access to their parole file so that they will have a meaningful opportunity to correct any inaccuracies therein.  Blackwell asserts that the Department's Parole Form 1212 created a rule allowing an inmate access to his parole file by stating that an inmate must notify the Board of any specific error in his file.  Form 1212 states, in pertinent part,

> In deciding whether or not to grant parole, the Parole Board considers, among other things, the [i]nmate's record before incarceration as well as during incarceration.  The record itself is prepared through investigations conducted for the Parole Board, and it becomes a part of the inmate's parole file.  The files are maintained by the Department of Probation, Parole and Pardon Services and are, by the statute, privileged and confidential.  The confidentiality of the parole file is far reaching; *inmates themselves have no right to inspect the contents of their files. If the inmate thinks his/her file is somehow incomplete or contains some errors or other inaccuracy, he/she must notify the Board of the specific error or inaccuracy.*  The Board will investigate the inquiry and notify the inmate of the action taken.

(emphasis added).  Despite the above statement that inmates have no right to inspect their files, this court recently emphasized the form's language requiring an inmate to notify the Board of any perceived inaccuracies and held that this language "necessarily implies the right to review the file," with reasonable redactions and sealing in place. *Kelsey v. S.C. Dep't of Prob., Parole, & Pardon Servs.*, 441 S.C. 373, 378, 893 S.E.2d 588, 591 (Ct. App. 2023), *cert. denied*, S.C. Sup. Ct. Order dated Mar. 5, 2024; *id.* at 379, 893 S.E.2d at 591 ("With the protections for victims in place by reasonable redaction and sealing, we find an inmate is entitled to review his or her file.").

Therefore, we reverse and remand for Blackwell to review his file and report any inaccuracies and for the Board to conduct a new hearing on Blackwell's parole application.[3]

## CONCLUSION

Accordingly, we reverse the ALC's order and remand to the ALC for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

**GEATHERS, HEWITT, and VINSON, JJ., concur.**

---

[3] We decline to address Blackwell's remaining issues. *See Earthscapes Unlimited, Inc. v. Ulbrich*, 390 S.C. 609, 617, 703 S.E.2d 221, 225 (2010) (holding that an appellate court need not address remaining issues when the resolution of a prior issue is dispositive).